Samuel K. GARAFOLA et al.,
Petitioners-Appellees,

v.

Charles L. BENSON, Warden, et al.,
Respondents-Appellants.

Nos. 74–1787 to 74–1789, 74–1791
and 74–1792.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1974.

Decided Nov. 18, 1974.

Rehearing Denied Dec. 5, 1974.

Stanley B. Miller, U. S. Atty., Richard L. Darst, Asst. U. S. Atty., Indianapolis, Ind., for respondents-appellants.

Michael B. Nash, Chicago, Ill., for petitioners-appellees.

Before SWYGERT, Chief Judge, and SPRECHER and TONE, Circuit Judges.

TONE, Circuit Judge.

These appeals involve challenges to the decision-making procedures of the United States Board of Parole in cases in which the sentencing judge, acting under 18 U.S.C. § 4208(a)(2), has specified "that the prisoner may become eligible for parole at such time as the board of parole may determine."

The federal sentencing statutes contain three provisions concerning parole eligibility of adult offenders. The first is 18 U.S.C. § 4202, which provides for the "straight" sentence, under which the prisoner may be released on parole after serving one-third of his term (or after serving fifteen years of a life sentence or a sentence of over forty-five years). The second and third are 18 U.S.C. § 4208(a)(1) and (2), adopted by Congress in 1958, 72 Stat. 845. Under these provisions the judge sentencing a defendant to a prison term may fix "a minimum term at the expiration of which the prisoner shall become eligible for parole," which cannot exceed one-third of the sentence (§ 4208(a)(1)), or may provide that the prisoner shall be eligible for parole whenever the Board of Parole so determines (§ 4208(a)(2)). Section 4208(a) thus allows the sentencing judge to permit the Parole Board to parole a prisoner earlier than the one-third of sentence point provided in § 4202.

The question before us is whether the Parole Board is required to give meaningful consideration to parole in a § 4208(a)(2) case before the expiration of one-third of the prisoner's sentence.

I

All five petitioners were sentenced under 18 U.S.C. § 4208(a)(2), and are serving their sentences at the United States Penitentiary at Terre Haute, Indiana. Petitioners Garafola, DeCesare and Horvath were sentenced for terms of three years, and petitioner Loy was sentenced for a term of two years. In each of these four cases the Parole Board held an initial parole hearing within approximately two or three months of the time the prisoner commenced his sentence, and in each instance the prisoner was denied parole and his case was "set off" or continued to the expiration of his sentence.

Petitioner Bartello was sentenced to a term of six years. He received his initial hearing approximately three months after he began to serve his sentence, and his case was set off for two years, until December, 1974.

Each of the petitioners filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 asserting that the Board's action was not in compliance with the requirements of 18 U.S.C. § 4208(a)(2). The petitions were assigned to a single district judge and consolidated by him pursuant to Rule 42(a), F.R.Civ.P., for determination of the common questions of law presented. The warden of the penitentiary is named as a respondent in all five petitions, and the Board of Parole and officials of the Board are named as additional respondents in four of the petitions. The United States Attorney, who represents all of the respondents, make no point of the absence of the Parole Board defendants in one of the cases, so we treat that case like the others.

The District Court entered an order to show cause in each case and the respondents filed motions to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted.

The District Court appears not to have expressly ruled on the motions to dismiss, but impliedly did so in a memorandum of decision dated August 2, 1974, holding that petitioners' construction of § 4208(a)(2) was correct. The court reasoned that "if § 4208(a)(2) has any purpose, and the Court must assume that it does, the purpose must be to allow the Board, in its discretion, to grant parole in less than one-third of the sentence in cases where all of the relevant circumstances warrant such action," a construction which, the court said, makes that provision compatible with §

4202. The court ordered that the writ issue discharging petitioners "unless within thirty days the Board rescinds its previous decisions as to them and substitutes new orders continuing them to dates at or prior to the expiration of one-third of their respective sentences, at which time they will be entitled to in-person parole consideration. In those cases where one-third of the term has already passed, the hearing is ordered to be held within 30 days of this date."

Shortly before the expiration of the 30-day period allowed by the District Court for the parole hearings, the respondents filed an application for stay pending appeal and a notice of appeal. Petitioners filed responses to the motion, reciting that the Parole Board had conducted parole hearings at Terre Haute during the period of August 19 through August 29, 1974 but had failed and refused to grant petitioners hearings and failed to modify its previous orders. These assertions were not denied by the respondents, and the District Court accepted them as true. On September 24, 1974, the court denied the motion for stay and ordered the warden to release petitioners on parole September 30, 1974 unless the order was stayed by this court.

On respondents' application, we stayed the District Court's order of September 24 and ordered an accelerated briefing schedule and an early setting for argument.

## II

In 1973 the Board of Parole adopted a table of guidelines for use in deciding the length of time a prisoner should serve before he is released on parole. 38 F.Reg. 31942 (1973), 28 C.F.R. § 2.20 (Rev. July 1, 1974). These guidelines, which set out point ratings for offenses and offender characteristics, represent an effort by the Board to "establish a national paroling policy" and to promote consistency and fairness in its parole decisions "without removing individual case consideration." 28 C.F.R. § 2.20(a) (Rev. July 1, 1974).

The Board continues to base its exercise of discretion in part on considerations outside the guidelines. According to an affidavit of the Board's Chairman printed as an appendix in Battle v. Norton, 365 F.Supp. 925, 932–933 (D.Conn. 1973):

"The guideline ranges are set for cases with good institutional performance. A hearing panel may render a decision either above or below the guideline range if it is justified by a sufficient explanation. Circumstances in which the Board may consider decisions below the guidelines include exceptionally good institutional performance; . . . and cases in which the Board feels that the clinical risk prognosis is substantially better than indicated by the offender characteristics score."

Thus, as Judge Jon O. Newman stated in Grasso v. Norton, 371 F.Supp. 171, 173 (D.Conn.1974) (*Grasso I*), even though prison performance "is not a factor that determines an inmate's rating on the offender characteristic scale," it "is not wholly excluded from parole decision making." On the contrary, the Board's regulations provide that among the factors the Board may consider in its parole decision-making, in addition to the guidelines, are "changes in motivation and behavior," "institutional experience," and "comments by hearing examiners; evaluative comments supporting a decision, including impressions gained from the hearing." 28 C.F.R. § 2.19(d), (f) and (j) (Rev. July 1, 1974). Thus, according to the Board's rules, the prisoner's institutional performance and achievement as well as the impressions gained and the evaluation made at the hearing are factors in the parole decision-making process of the Board.

## III

The Board's procedure when the prisoner has received a "straight" sentence under 18 U.S.C. § 4202 is to hold the initial hearing at the time he becomes eligible for parole, *i. e.*, at the completion

of one-third of the term.[1] United States Board of Parole, You and The Parole Board, pp. 1, 3 (1971). If a parole is not granted at that time the Board continues the case to another date for future consideration or "continues to expiration." In the latter event, no further consideration is given to parole. *Id.*, at p. 10.

The parole hearing which the prisoner receives at the one-third point of his sentence is conducted before two hearing examiners and normally lasts 15 to 20 minutes. The prisoner is entitled to be present and may be represented by a person of his choice. His case worker at the institution is often also present. Grasso v. Norton, 376 F.Supp. 116, 118 (D.Conn.1974) (*Grasso II*); see also United States Board of Parole, You and The Parole Board, p. 3; 28 C.F.R. §§ 2.-12, 2.13 (Rev. July 1, 1974). In a substantial number of cases, the prisoner is granted a parole at this initial hearing.

When the prisoner has been sentenced under § 4208(a)(2), the Board's practice is to hold its initial hearing, at which the prisoner personally appears, "as soon as possible after . . . commitment" (United States Board of Parole,

You and The Parole Board, p. 1), which is normally within two to four months after the prisoner begins serving his sentence. Ordinarily serious consideration is not given to parole at this initial hearing.[2] In the great majority of cases the Board continues the case, as it did the five cases before us, either to a date which is beyond the one-third point in the prisoner's sentence or until expiration of the sentence.[3]

The (a)(2) prisoner serving a relatively short sentence is thus likely to be paroled at a later date than his counterpart who has received a straight sentence under § 4202, or not to be paroled at all. Typically, the § 4202 prisoner would receive his initial hearing at the one-third point in his sentence and have a substantial chance of being paroled at that time. The (a)(2) prisoner would either receive his first meaningful hearing at a time later than the one-third point or, if the decision at the initial hearing was to "continue to expiration," would receive no consideration for parole whatsoever. The practices of the Board which produce this result were held to be illegal in *Grasso I, supra*, 371 F.Supp. 171 (D.Conn.1974).[4]

1. Except when the sentence is for a term of 180 days or less, or for life or over 45 years. A prisoner sentenced for 180 days or less is not eligible for parole. One sentenced for life or over 45 years becomes eligible for parole at the end of 15 years.

2. As the Board advises prisoners in its pamphlet, You and The Parole Board (p. 2), "If you received an indeterminate sentence (4208(a)(2) . . .) you should not usually expect to be granted parole at the time of your initial hearing; ordinarily serious consideration is not given until your second personal appearance before the Board, 'your review hearing.'" This appears to have been the Board's policy from the inception of the administration of § 4208(a)(2). See G. Reed, "Federal Parole and the Indeterminate Sentence," Federal Probation, December 1959, pp. 12–13.

3. In their brief in this court the respondents challenged the District Court's assertion that the Board's practice was to continue § 4208(a)(2) cases at the initial hearing to a point beyond one-third of the sentence, but in oral argument counsel for respondents conceded that we may take as substantially correct and representative of the Midwest

Region the statistics the Board's Director of Research supplied to the District Court in *Grasso II, supra*, 376 F.Supp. 116, 118. These statistics show that "at initial parole hearings for (a)(2) prisoners in the Northeast region from October, 1973, to March, 1974, 51% of the prisoners were given a setoff past the one-third point of their sentences and an additional 27% were continued to expiration." 376 F.Supp. at 118 n. 1. Thus 78% were given setoffs beyond the one-third point in their sentences or continued to expiration. *Id.*, at 120. During the same period only 17 or 18% of the (a)(2) prisoners in that region were released prior to the expiration of one-third of their sentences, *id.*, at 119 n. 2, and that figure included, of course, prisoners who were serving relatively long sentences and whose second, or review, hearings therefore came up before the one-third point and prisoners who had served the amount of time recommended by the guideline table by the time they were released.

4. The decision in *Grasso I* has been followed by the same court in Diaz v. Norton, 376 F. Supp. 112 (D.Conn.1974) and by another district court in Stroud v. Weger, et al., 380

In March 1974 the Chairman of the Board of Parole issued a memorandum to the Board's staff announcing as follows:

> "As a result of litigation in the 'Grasso' case, the following procedure was adopted by the Board and will be inserted in the Rules.
>
> 'A prisoner with a maximum sentence of two years or more under Section 4208(a)(2) who is continued to a date past one-third of his maximum sentence at an initial hearing shall upon completion of one-third of his sentence receive a review on the record (including a current institutional progress report) by an examiner panel.'"[5]

Diaz v. Norton, 376 F.Supp. 112, 116 n. 4 (D.Conn.1974).

This system of file review for (a)(2) prisoners at the one-third point of their sentences was adopted for the Northeast Region in June 1974 and, we were advised on oral argument, for the Midwest Region in October 1974. Although it will not be applied in cases in which initial hearings have already been held, respondents offer to provide file reviews to petitioners in this case.

## IV

■ It is apparent from the terms of the statutes governing the sentencing of adult offenders, § 4202 as well as § 4208, that at least one major purpose of § 4208(a)(2) is to provide the sentencing judge with the option of allowing the Parole Board to release the prisoner on parole at any time before the one-third point if in its judgment events after the date of sentencing warrant early release. When § 4208 was adopted in 1958 no additional authority was required for the paroling of a prisoner after the expiration of one-third of his sentence, for § 4202 already specifically authorized that. What was missing from the statutory scheme before the adoption of § 4208(a)(2) was any grant of authority to the sentencing court or the Board of Parole that would permit release of a prisoner earlier than the one-third point. That provision supplied the omission by permitting the judge either to shorten the mandatory minimum imprisonment period ((a)(1)) or to eliminate the minimum entirely and permit the Board to parole the prisoner at any time ((a)(2)). The statutory scheme completed by the adoption of § 4208(a) thus gives the judge sentencing an adult offender the three options of (1) a straight sentence, with parole eligibility after service of one-third of the sentence (§ 4202); (2) an indeterminate sentence with minimum and maximum confinement periods specified (§ 4208(a)(1)); and (3) an indeter-

F.Supp. 897 (M.D.Pa. 1974).

In the Fifth Circuit, the *Grasso* approach has been rejected by two district courts. Armes v. Grunska, et al. (M.D.Ala. No. 74–232–N, Sept. 5, 1974); Moody v. United States Board of Parole, et al. (N.D.Ga. No. C74–601 A, April 1, 1974). Both decisions relied on a prior Fifth Circuit decision in banc which had dismissed a prisoner's petition challenging the cursory review given (a)(2) cases in the initial parole hearing as violative of due process and contrary to the statutory requirements. Scarpa v. United States Board of Parole, et al., 477 F.2d 278 (5th Cir. 1973), vacated and remanded, 414 U.S. 809, 94 S.Ct. 79, 38 L.Ed.2d 44 (1973), ordered dismissed as moot, sub nom. Ridley v. McCall, 496 F.2d 213 (5th Cir. 1974). Although the *Scarpa* opinion did not explicitly discuss the issue presented in *Grasso*, in that it merely held that the scope of judicial review of Board of Parole determinations is extremely limited and does not include such matters as the weight of the factors to be considered in the process or the appropriate amount of investigation prior to the decision on parole, the opinion can be interpreted as indicating disapproval of the *Grasso* approach. Of course, *Scarpa's* subsequent history makes the case of no precedential value. The Fifth Circuit reiterated its general view as to the narrow scope of judicial review and the broad discretion vested in the Board of Parole in Sexton v. Wise, 494 F.2d 1176, 1178 (5th Cir. 1974).

5. Substantially this language now appears in the Board's rules. 28 C.F.R. § 2.14(b) (Rev. July 1, 1974).

minate sentence with no minimum and only a maximum specified (§ 4208(a) (2)).

■ A major purpose of any indeterminate sentence provision is to give the Parole Board discretion to determine when a prisoner has reached that point in his rehabilitation process at which he should be released under supervision to begin his readjustment to life in the community. By keeping the minimum low, the prisoner is encouraged "to earn favorable consideration for parole in accord with the public policy embodied in the parole statutes." National Council on Crime and Delinquency, Guides for Sentencing 21 (1963). An additional purpose of indeterminate sentencing is to provide a mechanism for reducing disparity of sentences given by different judges. Both of these goals have long been stressed by commentators and advocates of modified indeterminate sentencing plans for the federal courts. See e. g., the symposium on the indeterminate sentence in Federal Probation, January 1941, pp. 1–27; "Report to the Judicial Conference of the Committee on Punishment for Crime," Federal Probation, July 1942, p. 40; and P. McCormick, "A Judge Discusses the Pro-

posed Federal Corrections Act," Federal Probation, January 1944, p. 3. That both of these purposes were brought to the attention of Congress and played a role in the passage of (a)(2) in particular is demonstrated by the legislative history of the statute.[6] In addition, Congress intended to expand the executive department's role in determining length of imprisonment. See 104 Cong. Rec. 13391–13401 (1958); S.Rep. No. 2013, Conf.Rep. No. 2579 and letter from Lawrence E. Walsh, Deputy Attorney General, July 25, 1958, 85th Cong. 2d Sess. (1958), 2 U.S.Code Cong. & Admin. News pp. 3891–3896 (1958). As for disparity, however, Congress must have recognized that (a)(2) would have only a modest impact, since its use is optional with the judge and judges who tend to give severe sentences are not the ones most likely to make frequent use of (a)(2) or even (a)(1).[7]

■ The judge who sentences a prisoner under § 4208(a)(2) ordinarily contemplates that, at an appropriate time before the one-third point in the sentence, the Parole Board will exercise a meaningful judgment upon, i. e., give "serious consideration"[8] to, the question of whether the prisoner should be pa-

---

6. Congressman Emanuel Celler, principal author of the bill, stated that § 4208(a)(2) constituted authority for a federal judge to dispense with the statutory minimum for eligibility for parole. 104 Cong.Rec. 13392–3 (1958). Congressman Celler's view is reiterated elsewhere in the legislative history of this section and accompanying commentaries. See Judicial Conference Report, Committee on the Administration of Criminal Law, 268–9 (1958), ABA Section of Criminal Law Proceedings 91–2 (1958). Respondents point to statements by Congressman Keating in the House debates to the effect that § 4208(a)(2) could be used to preclude the seasoned criminal from being "automatically eligible" for parole after serving one-third of his sentence. 104 Cong.Rec. 13393 (1958). Since the Parole Board had authority under the existing sentencing statute, § 4202, to refuse to parole any prisoner until the expiration of his sentence, it would appear that the latter statement was based on a misapprehension. Because the history, as a whole, firmly establishes that (a)(2) was intended as a step in the direction of increased individualization in the federal sentencing

process, sentencing under (a)(2) must be viewed as an exercise of the judiciary's authority "to except such prisoner from the statutory limitation as to eligibility for parole when in the judgment of the court it might reasonably be expected to facilitate the rehabilitation of the prisoner." Statement presented before Subcommittee No. 3 of the House Committee on the Judiciary at a Hearing on April 30, 1958, on House Joint Resolution 424–425 and H.R. 8923, 2 U.S. Code Cong. & Admin. News p. 3894 (1958).

7. Cf. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures, 159 (1968):
    "Parole eligibility in the federal system is automatically set at one-third of the maximum sentence imposed, 18 U.S.C. § 4202 (1951), unless the court takes the initiative to set the minimum at some lower point. 18 U.S.C. § 4208(a) (1964). In the opinion of the Advisory Committee, this is the reverse of what it should be."

8. In the Board's words. You and the Parole Board 2.

roled before the one-third point. In a comprehensive paper on sentencing that among federal district judges is perhaps the most widely used text and guide on the subject, Judge Walter E. Hoffman states that while an (a)(2) sentence "does not *per se* indicate early parole," it "supplies flexibility to program the individual in prison and to grant parole based on his adjustment and readiness for release." W. Hoffman, "Purposes and Philosophy of Sentencing," Seminars for Newly Appointed United States District Judges, 286, 307 (West Pub. Co. 1971). See also Federal Judicial Center, Desk Book for Sentencing IV-29—31 (1962):

> "Thus, the 4208(a)(2) procedure empowers the treatment staff to set up goals for the prisoner to achieve, to require that he meet these goals before he can be released, and to release him promptly when his assigned goals have been attained."

The *Desk Book for Sentencing* also contains (pp. IV-30—31) the following statement by Judge Edward J. Devitt:

> "When will he have received the maximum benefits of confinement? We judges don't know the answer to that crucial question, and bountifully as we may be blessed with wisdom, we are not possessed of the prescience to foretell it.
>
> "By the use of this new statute, we can delegate to the Parole Board the authority to wisely fix the terminus of the sentence on the basis of the prisoner's progress in rehabilitation and his attitudes toward a return to society."

Judge Francis L. Van Dusen said at the 1964 Institute on Sentencing in Colorado:

> "The majority of Federal Judges prefer giving such discretion to the Parole Board in most cases and, hence, make use of 18 U.S.C. § 4208(a)(2) in their sentences (see 30 F.R.D. 459, paragraph '2'). The analogy has been used by some judges that a person should not expect a judge at the time

of sentence to be able to determine the exact term of confinement, since such person would not expect a doctor to prescribe a definite period of commitment to a hospital the moment after an operation. In both cases, the progress of such person (whether called patient or defendant) should be considered in determining the time of confinement." "Trends in Sentencing Since 1957 and Areas of Substantial Agreement and Disagreement in Sentencing Principles," Institute on Sentencing for United States District Judges, 35 F.R.D. 381, 401 (1964).

And as Judge Newman said in *Grasso I*:

> "Sentencing judges using the provisions of § 4208(a)(2) have done so in the expectation that the Board will consider prison performance in deciding whether to grant early parole. Judge Weinfeld recently observed, in deciding to sentence pursuant to § 4208(a)(2), 'The Parole Board . . . determines, based on all significant factors, whether the defendant's response to the institutional program has been such that release on parole' is warranted. United States v. Zacharias, 365 F.Supp. 256, 257 (S.D. N.Y.1973). In this very case, Judge Foley, in imposing sentence, explained to petitioner that 'the sentence in this type of case is in your favor. You are sentenced under Title 18, Section 4208(a)(2), which means that the Board of Parole may determine your eligibility for parole. It depends upon your behavior at Danbury. . . . ' "

371 F.Supp. at 174.

And see Seminar and Institute on Disparity of Sentences for Sixth, Seventh and Eighth Judicial Circuits, 30 F.R.D. 401, 459 (1961).

We conclude that § 4208(a)(2) was enacted, and has been interpreted by sentencing judges since its enactment, to give the court sentencing an adult offender the authority to make him eligible for release at any time that in the Board's judgment is appropriate in light of factors that include his institutional performance and progress. Therefore,

that provision, read in the context of the statutory scheme, imposes a duty on the Board to give meaningful consideration to parole prior to the time the Board would do so if the prisoner had been sentenced under § 4202. The Board breaches this duty when, by its own admission, it "ordinarily" fails to give "serious consideration" to an (a)(2) prisoner's parole application at the initial hearing, and in more than three fourths of the (a)(2) cases either never again considers the application or does not consider it until substantially more than one-third of the sentence has been served.

The Board has breached its statutory duty in the five cases before us. In four of these cases the Board entered orders after the initial hearing continuing the cases until the expiration of the sentences. By this order the Board determined in effect that it would never give "serious consideration" to the petitioners' parole applications. In the fifth case the Board entered an order after the initial hearing continuing the case until a date well beyond the one-third point in the sentence, thus deciding in effect that it would not give "serious consideration" to this (a)(2) prisoner's application until well after the time it would have done so if he had been sentenced under § 4202. The situation created by the Board's orders "is not merely ironical; it is illegal." *Grasso I*, 371 F.Supp. at 174. Petitioners are entitled to relief from the effect of these illegal orders.

## V

We come now to the question of what kind of relief is appropriate. Respondents have offered to conduct a review on the record in these five cases under § 2.14(b) of the Board's new regulations. Such a review would not constitute adequate relief. The petitioners have been injured by illegal orders by which the Board not only denied petitioners any meaningful parole consideration but prospectively determined that no meaningful consideration will ever be given in the four cases continued to expiration and that it will not be given in the fifth case until after the prisoner has served substantially more than one-third of his sentence. It is not enough for the Board merely to consider whether to vacate its illegal orders, *i. e.*, to decide whether its previous illegal decisions should be changed.[9] Those orders should be vacated so the Board can write on a clean slate. A hearing of the kind given non-(a)(2) prisoners should then be provided. This means an institutional hearing at which the prisoner may appear in person as provided in § 2.12 of the Board's rules. Without that, he would lose the opportunity to have the Board consider the factor of "Comments by hearing examiners; evaluative comments supporting a decision, including impressions gained from the hearing," as provided in § 2.19(j) of the Board's rules. 28 C.F.R. § 2.19 (Rev. July 1, 1974).[10]

The orders entered by the District Court will be modified to provide that unless, within fourteen days from the entry of this court's judgment in the case of petitioner Bartello,[11] and within thirty days in the other cases, the Board (a) vacates its previous orders in these cases, (b) holds a hearing and makes a good faith determination in each case

9. As the court said in *Grasso II*:
"When the non-(a)(2) prisoner has his hearing at the one-third point of his sentence, the examiners conscientiously decide what parole decision is appropriate. However, when the (a)(2) prisoner gets a file review at the one-third point, after having first received a setoff to a date well beyond the one-third point, the Board is starting with a slightly stacked deck. The decision is not whether and when should he be paroled; it is whether the setoff previously given should be changed.

In all processes of decision-making, it is more difficult to undo a decision already made, than to decide the same issue on a clean slate." 376 F.Supp. at 118.

10. See also *Grasso II*, 376 F.Supp. at 118, 119.

11. Bartello's review hearing is presently scheduled for December, 1974. In his case, therefore, we are shortening the compliance period and ordering that the mandate issue on the seventh day after the entry of our judgment.

in accordance with §§ 2.12 and 2.13 of its rules, and (c) informs each petitioner of its action and, if parole is denied, the reasons therefor, the petitioners shall be released on parole on the thirty-first day after the entry of this court's judgment. As modified, the orders of the District Court are affirmed.

Affirmed as modified.