**Roy Carl REED, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**No. 74-260-C3.**

United States District Court,
D. Kansas.

Jan. 16, 1975.

Mary Briscoe, Topeka, Kan., Asst. U. S. Atty., for respondent.

## MEMORANDUM AND ORDER

THEIS, District Judge.

United States Penitentiary at Leavenworth, Kansas. The Court previously issued an Order to Show Cause which require response to two contentions concerning actions taken by the Board of Parole. Respondent has now filed its answer and return and petitioner has submitted his traverse. Since it is apparent from the pleadings that there is no dispute as to any material fact, the Court can resolve the case without a hearing as provided in 28 U.S.C. § 2243.

On September 18, 1973, petitioner was sentenced to a term of five years with parole eligibility to be determined under 18 U.S.C. § 4208(a)(2). Section 4208(a)(2) makes the prisoner sentenced thereunder eligible for parole "at such time as the board of parole may determine." Present Board of Parole regulations require that an (a)(2) prisoner be given a parole hearing as soon as possible after commitment. On November 15, 1973, approximately two months after his commitment, petitioner received his initial parole hearing. At that time parole was denied and petitioner's case was continued until November, 1975, for his next institutional review hearing.

Petitioner first complains that the Board of Parole failed to provide him a statement of the reasons for denying his parole. In Mower v. Britton, 504 F.2d 396 (10th Cir. 1974), it was held that § 6(d) of the Administrative Procedure Act, 5 U.S.C. § 555(e), applies to the Board of Parole. The Board is thus required to provide a written statement of the reasons for denying parole *upon written request by the inmate.* However, petitioner does not allege, and it does not appear, that petitioner has requested such a statement. Since he has failed to exhaust his administrative remedy, the Court must refuse jurisdiction of this issue. Jones v. Henderson, 495 F.2d 559 (5th Cir. 1974); Rivera v. Toft, 447 F.2d 534 (10th Cir. 1973).

Petitioner's next complaint relates to the Board's decision to continue his case for hearing until November, 1975, that is, until more than one-third of his sentence has been served. Respondent admits that this action was taken by the Board. Petitioner argues that this decision violated the congressional intent expressed in 18 U.S.C. § 4208(a)(2). In support of this contention petitioner relies upon Grasso v. Norton, 371 F.Supp. 171 (D.Conn.1974); and Grasso v. Norton, 376 F.Supp. 116 (D.Conn.1974). (These cases will be hereinafter referred to as *Grasso I* and *Grasso II*, respectively).

The facts underlying both *Grasso I* and *II* substantially parallel the facts in the instant case. Petitioner Frank Grasso had been sentenced to a term of three years with parole eligibility to be determined under 18 U.S.C. § 4208(a)(2). After approximately three months of incarceration, Grasso was given his initial parole hearing. Parole was denied and his case was continued until expiration of his sentence. Judge Jon O. Newman aptly found that the parole consideration given Grasso frustrated the beneficial purpose of § 4208(a)(2). This finding was grounded primarily on the premise that an (a)(2) prisoner cannot receive less effective parole consideration than a non-(a)(2) prisoner. When a sentence is imposed under 18 U.S.C. § 4202, the prisoner is not eligible for parole until he has served one-third of his sentence. An (a)(2) prisoner is theoretically eligible for parole immediately after sentencing, and certainly is eligible before serving one-third of his sentence. Section 4208(a)(2) is therefore intended to confer a beneficial opportunity upon a recipient of such type of sentence. Noting that a non-(a)(2) prisoner is entitled to a parole hearing after serving one-third of his sentence, the Court reasoned that an (a)(2) prisoner would be entitled to at least the same opportunity.

The Court there also noted that the prisoner's conduct and rehabilitative progress while at the institution was intended to be a significant factor in determining parole eligibility under § 4208(a)(2). Under present Parole Board regulations, the Board relies heavily upon a table of guidelines to determine the appropriate length of time to be served before release on parole.

28 C.F.R. § 2.20 (1974). These guidelines place little, if any, emphasis on prison performance. The Court acknowledged that prison performance may, under Board regulations, be an appropriate reason for granting parole earlier than indicated by the guidelines. 28 C.F.R. § 2.20(c) (1974). Board regulations also provide for special review at any time upon receipt of information which may have a significant bearing on parole. 28 C.F.R. § 2.28 (1974). Nevertheless, for the (a)(2) prisoner the application of the guidelines after only two or three months of incarceration can be a deterrent to hope and a significant handicap. If at the initial hearing an (a)(2) prisoner's case is continued to beyond the one-third point of his sentence, an adverse decision has been made before he has served long enough to permit the Board to evaluate his prison performance. In *Grasso I* the Court therefore ordered that Grasso be released unless given additional parole consideration at a time to be determined by the Board of Parole, but not later than the one-third point of his sentence.

In order to comply with *Grasso I*, the Board of Parole scheduled a hearing for Grasso on February 28, 1974, prior to the one-third point in his sentence. The Board subsequently canceled the parole hearing and attempted to satisfy the requirements of *Grasso I* by reviewing Grasso's file supplemented by a progress report prepared by a case worker. Grasso then filed a motion for supplemental relief arguing that this file review did not comport with the congressional intent expressed in § 4208(a)(2) as interpreted by *Grasso I*. In response to this motion, the Court held in *Grasso II*, that a file review was not sufficient, and ordered Grasso's release from custody. Again, the Court based its ruling primarily upon the proposition that an (a)(2) prisoner could not receive a less effective opportunity for parole than a prisoner serving a "straight" § 4202 sentence. Since a non-(a)(2) prisoner is given a hearing before the Board, not merely a file review, the Court concluded that an

(a)(2) prisoner must also be given a hearing. This hearing must be given, the Court ruled, not later than the one-third point of the prisoner's sentence and is in addition to the hearing presently given (a)(2) prisoners immediately after incarceration.

The rationale of the *Grasso* decisions was approved by the Seventh Circuit Court of Appeals in Garafola v. Benson, 505 F.2d 1212 (7th Cir. Nov. 8, 1974). The Court there held that § 4208(a)(2) imposes a duty to give meaningful consideration to parole prior to the time the Board would do so if the prisoner had been sentenced under § 4202. In defining "meaningful consideration," the Court made two findings or rulings. First, the Court found that the present provisions for hearing immediately after commitment do not result in meaningful consideration. This finding was based in part upon the Board's admissions and in part upon statistical data:

"... The Board breaches this duty when, by its own admission, it 'ordinarily' fails to give 'serious consideration' to an (a)(2) prisoner's parole application at the initial hearing, and in more than three fourths of the (a)(2) cases either never again considers the application or does not consider it until substantially more than one-third of the sentence has been served." (Garafola v. Benson, supra).

Second, the Court ruled that meaningful consideration requires a hearing of the type afforded non-(a)(2) prisoners, that is, a hearing at which he may appear in person as provided in 28 C.F.R. § 2.12 (1974). The Court ordered that such a hearing be given five petitioning prisoners prior to the one-third point of their sentences. Four of the petitioners had, at their initial hearing, been continued until the expiration of their sentence, and the fifth had been continued until well beyond the one-third point of his sentence.

Respondent contends that the purpose of § 4208(a)(2) is satisfied by the file review, supplemented by a progress report, at the one-third point of the sen-

tence. Such a review is presently required for (a)(2) prisoners by Parole Board regulations. 28 C.F.R. § 2.-14(b) (1974). Respondent argues that the only relevant issue, the prisoner's institutional progress, is adequately reflected in the file. The Court notes that under the most recent Bureau of Prisons Policy Statement relating to progress reports, interim progress reports are required for all (a)(2) prisoners. Bureau of Prisons Policy Statement 7200.12A (Dec. 16, 1974). Although rejected in *Grasso II* and *Garafola*, other courts have adopted the position taken here by respondent. See, e. g. Stroud v. Weger, 380 F.Supp. 897 (M.D.Penn.1974); United States v. Korner, No. 73–CR–984 (E.D.N.Y. 8–26–74). This Court is nevertheless persuaded by the following analysis in *Grasso II*:

> "The proposed system of file review for (a)(2) prisoners at the one-third point of their sentences is a significant improvement over the Board's prior practice of giving consideration, after the initial hearing, only at a date well beyond the one-third point and, in some instances, no further consideration at all. Nevertheless, the file review still runs counter to the purposes of § 4208(a)(2) because it accords (a)(2) prisoners a form of parole consideration less satisfactory than that accorded non-(a)(2) prisoners. The differences are significant. The testimony disclosed that a parole hearing at F.C.I., Danbury, normally lasts fifteen to twenty minutes. During this time the hearing examiners question the prisoner closely. Thus, at the one-third point of his sentence, a non-(a)(2) prisoner has the opportunity to speak directly with the examiners and respond to their questions. Often his case worker is present to respond to the examiners' inquiry. The (a)(2) prisoner, remitted to a file review, loses this opportunity for direct personal contact. The fact that he had a hearing shortly after he arrived at the institution is no answer, because the very brevity of his time served before that first hearing precluded any realistic opportunity to persuade the examiners that his institutional progress merited parole.

> "There is another, more subtle difference. When the non-(a)(2) prisoner has his hearing at the one-third point of his sentence, the examiners conscientiously decide what parole decision is appropriate. However, when the (a)(2) prisoner gets a file review at the one-third point, after having first received a setoff to a date well beyond the one-third point, the Board is starting with a slightly stacked deck. The decision is not whether and when he should be paroled; it is whether the setoff previously given should be changed. In all processes of decision-making, it is more difficult to undo a decision already made, than to decide the same issue on a clean slate."

■ The Court has frequently referred to the § 4208(a)(2) sentence as a "boot-strap" sentence, and has imposed such sentences with the understanding and expectation that it would provide a beneficial opportunity for moral reform rather than a handicap. Section 4208(a)(2) is intended to permit those sentenced pursuant thereto an element of control over their future by making the date of their release contingent, at least in part, upon their conduct while in the institution. It is hoped that such a sentence will thereby serve a rehabilitative function. Prisoners sentenced under § 4208(a)(2) appear to be handicapped, not benefitted, and the purpose of that section is therefore frustrated, if not defeated, unless an (a)(2) prisoner has a meaningful opportunity to present his request for parole at least as early and effectively as the non-(a)(2) prisoner. Most trial judges share this view. At a Sentencing Institute held in Springfield, Missouri, in April, 1974, for the district and appellate judges of the Eighth and Tenth Circuits, it was the near unanimous opinion that congressional intent and judicial interpretation were being nullified by the administrative policy of the Parole Board in handling § 4208(a)(2) prisoners. The

Court shares the opinions expressed in *Grasso I* and *II*, and *Garafola*, that such an opportunity is provided neither by the initial parole hearing given immediately after commitment, nor by the file review at the one-third point of the sentence. Administrative guidelines can never substitute for reasoned deliberation and compassionate consideration of the facts of human behavior.

In the present action, petitioner was sentenced on September 18, 1973, to a term of five years. He will have served one-third of his sentence on May 18, 1975. In order to satisfy the purpose of § 4208(a)(2), petitioner must be given a parole hearing before May 18, 1975.

It is therefore ordered that a writ will issue discharging petitioner unless within thirty (30) days the Board rescinds its decision to continue petitioner until November, 1975, and substitutes in lieu thereof a new order continuing petitioner to a date prior to the expiration of one-third of his sentence, at which time he will be entitled to a parole hearing—and not merely a file review.

It is further ordered that the Clerk transmit copies of this Memorandum and Order to the petitioner herein, and to the office of the United States Attorney at Wichita, Kansas.