**Alfredo SALAZAR, Plaintiff,**

v.

**UNITED STATES BOARD OF PAROLE, Defendant.**

Civ. A. No. 4–72532.

United States District Court,
E. D. Michigan, S. D.

April 17, 1975.

---

**1074**

Alfredo Salazar, pro se.

Ralph B. Guy, Jr., U.S. Atty., Jeffrey A. Heldt, Asst. U.S. Atty., Detroit, Mich., for defendant.

## OPINION

RALPH M. FREEMAN, District Judge.

Presently before the Court is a petition for a writ of habeas corpus filed by an inmate at the Federal Correctional Institution at Milan, Michigan. The petition is filed under 28 U.S.C. § 2241 and names the United States Board of Parole as the respondent.

After entering a plea of guilty to a violation of 21 U.S.C. § 841(a)(1), petitioner was sentenced on October 4, 1973 to a term of seven (7) years' imprisonment. His sentence was made pursuant to 18 U.S.C. § 4208(a)(2) which permits parole of a prisoner at any time at the discretion of the Parole Board.

In April of 1974 after seven months of incarceration, petitioner was given a parole eligibility hearing. Following said hearing, the Parole Board denied petitioner's parole and continued petitioner for a period of thirty-six (36) months before another review hearing would be held. Petitioner argues that such a set-off operates to defeat his right to be considered for parole prior to the expiration of one-third of his sentence. The question before this Court is, therefore, whether the Parole Board is required to give meaningful consideration for parole to a prisoner sentenced under 4208(a)(2) before the expiration of one-third of the prisoner's sentence.

In making the determination of the appropriate length of time to be served before an inmate is released on parole, the Board of Parole utilizes the tables set forth in 28 CFR § 2.20. The tables provide guidelines for various combinations of offense severity and offender characteristics. In petitioner's case at the initial parole hearing the Board determined that petitioner had a very good salient factor of 11 which is primarily based upon the prisoner's prior behavior. However, because the severity of the offense was very high the guidelines call for a minimum term of incarceration of from 26–36 months. The Parole Board set petitioner's next eligibility hearing for April of 1977, approximately 42 months after the initial date of incarceration. Thus, petitioner will not be given an eligibility hearing until the expiration of one-half of the seven year sentence imposed by the Court.

Had petitioner been given a straight sentence he would be eligible for parole

after serving one-third of his term as provided in 18 U.S.C. § 4202. The effect of applying the parole guidelines to a prisoner in petitioner's situation is to continue the prisoner for a period well beyond the expiration of one-third of the sentence before he is eligible for parole consideration.

■ The legislative history of § 4208(a)(2) indicates that the provision was adopted for the dual purposes of eliminating the disparity in sentences for the same or similar offenses and to allow sentencing judges to share with the executive branch of the government the responsibility of determining when an inmate should be eligible for parole. See U.S.Code Cong. and Admin.News pp. 3891–3906 (1958). An additional purpose of the (a)(2) provision was noted in Grasso v. Norton, 371 F.Supp. 171 (D.Conn.1974):

> "Section 4208(a)(2) was enacted to give sentencing judges the opportunity to make federal prisoners eligible for release at any appropriate time, without having to serve the one-third of their sentences that would otherwise be required for parole eligibility. 18 USC § 4202. The author of the provision, Congressman Emanuel Celler, emphasized that prison performance was to be a key factor in determining whether an inmate sentenced under the (a)(2) provisions actually secured early release. The provisions are designed, he said, to permit release under supervision at a date earlier than one-third of the sentence "should the prisoner's response to the rehabilitation program justify it." *Grasso* at 173.

The preceding statement expresses this Court's consideration when sentencing a defendant under § 4208(a)(2). At the time of sentencing it is virtually impossible for a judge to determine the appropriate length of confinement and he can delegate the responsibility for making that decision to the Parole Board by use of the (a)(2) provision. The utility of the (a)(2) provision in this respect was expressed in a statement by Judge Edward J. Devitt which is set forth in Garafola v. Benson, 505 F.2d 1212 at 1218 (7th Cir. 1974):

> "When will he have received the maximum benefits of confinement? We judges don't know the answer to that crucial question, and bountifully as we may be blessed with wisdom, we are not possessed of the prescience to foretell it.
>
> By the use of this new statute, we can delegate to the Parole Board the authority to wisely fix the terminus of the sentence on the basis of the prisoner's progress in rehabilitation and his attitudes toward a return to society."

In *Garafola* and *Grasso, supra,* the courts were presented an issue substantially identical to that which this court must decide. The Seventh Circuit Court of Appeals in *Garafola,* after reviewing the legislative history of 4208(a)(2) and the posture of various sentencing judges in applying the (a)(2) provision, held:

> "We conclude that § 4208(a)(2) was enacted and has been interpreted by sentencing judges since its enactment, to give the court sentencing an adult offender the authority to make him eligible for release at any time that in the Board's judgment is appropriate in light of factors that include his institutional performance and progress. Therefore, that provision, read in the context of the statutory scheme, imposes a duty on the Board to give meaningful consideration to parole prior to the time the Board would do so if the prisoner had been sentenced under § 4202. The Board breaches this duty when, by its own admission, it 'ordinarily' fails to give 'serious consideration' to an (a)(2) prisoner's parole application at the initial hearing, and in more than three-fourths of the (a)(2) cases either never again considers the application or does not con-

**1076**

sider it until substantially more than one-third of the sentence has been served." *Garafola, supra,* at 1218–1219.

This Court is in total agreement with the opinion in *Garafola.* In order to fulfill the purposes of § 4208(a)(2) petitioner must be given a meaningful parole hearing at or prior to the expiration of one-third of petitioner's sentence. This is the minimum required of the Parole Board in performance of its duty. This Court would further suggest that the Parole Board periodically review the institutional performance of all prisoners sentenced under the (a)·(2) provision in order that an informed judgment can be made as to the need for further confinement.

As in *Garafola,* the Parole Board has breached its statutory duty as regards the petitioner in the case at hand. By entering an order after the initial hearing continuing petitioner's case until a date well beyond the one-third point in the sentence, the Board has in effect decided not to give serious consideration to this (a)(2) prisoner's application until well after the time it would have done so if petitioner had been sentenced under § 4202. The Board's action is illegal in that it is contrary to the intent of the statute. The petitioner is, therefore, entitled to relief from the Parole Board's order.

The appropriate relief in the situation was fashioned by the court in *Garafola.* Suffice it to say, it is not enough to simply order a new parole hearing be held at or before the one-third point in the sentence. The original action of the Board must be nullified in order that any future parole consideration is not prejudiced by prior illegal action. Accordingly, the Parole Board shall vacate its previous order continuing petitioner for thirty-six (36) months and an institutional parole hearing shall be held at or before the expiration of one-third of petitioner's sentence.