**Whitney Paul KILLS CROW, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 76–1908.**

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1977.
Decided May 12, 1977.

---

Glenda Gordon, U.S. Dept. of Justice, Washington, D. C., for appellant; Richard L. Thornburgh, Asst. Atty. Gen., and George W. Calhoun, Atty., Dept. of Justice, Washington, D. C., on the brief.

John T. Hughes, Sturgis, S. D., on brief for appellee.

Before GIBSON, Chief Judge, and WEBSTER and HENLEY, Circuit Judges.

GIBSON, Chief Judge.

In *Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975), we ruled that an inmate sentenced under 18 U.S.C. § 4208(a)(2) may be entitled to have his sentence modified under 28 U.S.C. § 2255 if the import of the sentence was changed by parole guidelines promulgated contemporaneous with the imposition of the sentence. Since *Kortness,* we have observed a proliferation of § 2255 petitions filed by resourceful prisoners who have felt aggrieved by adverse rulings of the Parole Board. To date, all efforts to convince this court to extend *Kortness* beyond its intended, and extremely limited, jurisdictional boundaries have proved futile.[1] In the present case, we are urged to extend the *Kortness* rationale to cases where the Parole Board's guidelines were promulgated before the imposition of the § 4208(a)(2) sentence but the sentencing judge, who was aware of the guidelines, states that he misapprehended the actual effect of the guidelines at the time of sentencing. We hold that the District Court lacks § 2255 jurisdiction under these circumstances to modify the petitioner's sentence.

1. *Banks v. United States,* 553 F.2d 37 (8th Cir. 1977); *Gravink v. United States,* 549 F.2d 1152 (8th Cir. 1977); *Jacobson v. United States,* 542 F.2d 725 (8th Cir. 1976); *Fields v. United States,* 542 F.2d 472 (8th Cir. 1976); *United States v. Clinkenbeard,* 542 F.2d 59 (8th Cir. 1976); *United States v. White,* 540 F.2d 409 (8th Cir. 1976); *Stead v. United States,* 531 F.2d 872 (8th Cir. 1976); *see Holmes v. United States,* 551 F.2d 1140 (8th Cir. 1977).

## I.

In 1975, petitioner Whitney Paul Kills Crow was convicted in the United States District Court for the District of South Dakota of assault with a dangerous weapon and of using a firearm in the commission of a felony. 18 U.S.C. §§ 924(c)(1), 1153 (1970). Kills Crow was sentenced to two concurrent three-year terms under 18 U.S.C. § 4208(a)(2), which allows for parole at any time in the discretion of the Parole Board. The convictions were affirmed on appeal. *United States v. Kills Crow,* 527 F.2d 158 (8th Cir. 1975). Kills Crow thereafter filed a timely motion for reduction of sentence under Fed.R.Cr.P. 35, but the sentencing judge denied the motion.

Kills Crow was committed to the Federal Correction Institution at Sandstone, Minnesota. On November 11, 1975, after serving nearly five months of his sentence, Kills Crow was afforded an in-person initial parole hearing where he was permitted to apprise the parole authorities of his participation in various vocational and educational programs at Sandstone. The Parole Board ruled that, by applying its parole guidelines, an inmate with offender and offense characteristics similar to Kills Crow's would not be eligible for parole until after 45 months of incarceration. Therefore, the Board denied parole and continued Kills Crow's case to the one-third point of his sentence, as specified by the parole guidelines.

After serving eleven months of his sentence, Kills Crow was granted another in-person parole hearing before the Parole Board. Kills Crow, who was represented at the hearing by a counselor from the Bureau of Indian Affairs, presented a favorable institutional progress report to the Board.

However, the Board again denied parole, citing Kills Crow's offense and offender characteristics and stating again that an inmate with such characteristics would normally have to serve at least a 45 month sentence under the guidelines. The Board concluded that "[a]fter review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted." This decision, in essence, required Kills Crow to remain incarcerated until his mandatory release date of October 3, 1977.

Rather than avail himself of the internal administrative appeals procedure,[2] Kills Crow instituted the present § 2255 action in the District of South Dakota. Essentially, the petition alleged that the sentencing judge, by sentencing Kills Crow to three years under § 4208(a)(2), expected the Board to grant Kills Crow meaningful parole consideration on or before the one-third point of the sentence. It was argued that, even though the parole guidelines were promulgated nearly two years prior to the imposition of Kills Crow's sentence,[3] the sentencing judge was unaware that the guidelines would operate to require Kills Crow to serve his entire sentence. Therefore, the sentencing judge made a "critical error" in the sentencing process and § 2255 relief is available to Kills Crow under *Kortness v. United States, supra.*

Kills Crow's action was heard by the judge who had initially sentenced him and the judge, after a hearing, granted § 2255 relief to Kills Crow. In its order, the District Court stated that it had sentenced Kills Crow under § 4208(a)(2) "with the understanding and expectation that this provision would permit great flexibility and

---

2. Within 30 days of the adverse parole decision, Kills Crow could have filed an appeal with the responsible Regional Commissioner alleging that the reasons for the denial did not support the decision or that significant information had been discovered since the hearing. 28 C.F.R. § 2.25 (1976). An adverse decision by the Regional Commissioner could have been appealed to the National Appeals Board. 28 C.F.R. § 2.26 (1976). *See also* Parole Commission and Reorganization Act, Pub.L. No. 94–233, § 4215, 90 Stat. 230.

3. Kills Crow was sentenced on July 25, 1975. The parole guidelines in question were initially promulgated on November 19, 1973. 38 Fed. Reg. 31942 (Nov. 19, 1973). These initial guidelines were improperly adopted and were ruled invalid, *Pickus v. United States Board of Parole,* 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974), but were subsequently reissued as emergency regulations under 5 U.S.C. § 553(b) (1970). 39 Fed.Reg. 45223 (Dec. 31, 1974).

with good adjustment permit early release." The court stated that it was not fully cognizant of the degree to which the parole guidelines would influence parole decisions. As a result of these guidelines, the court concluded, Kills Crow would be required to serve his entire three-year sentence, a result not contemplated by the court at the time of sentencing. Therefore, Kills Crow's sentence was reduced to time served and he was released from custody.

## II.

At the time of Kills Crow's sentencing, the trial judge was confronted with three sentencing options.[4] He could have imposed a "straight" sentence under 18 U.S.C. § 4202, which would have rendered Kills Crow eligible for parole after serving one-third of the sentence. Alternatively, under 18 U.S.C. § 4208(a)(1), the judge could have imposed a maximum term of years and then designated a minimum term, not extending beyond the one-third point of the sentence, at which time Kills Crow would have been eligible for parole. Rejecting the straight sentence under § 4202 and the indeterminate sentence under § 4208(a)(1), the District Court opted to sentence Kills Crow under 18 U.S.C. § 4208(a)(2), which allows the Parole Board to determine when the defendant should be paroled. Under § 4208(a)(2), the Parole Board is empowered to exercise its administrative discretion and grant or deny parole at any point in the sentence, giving due consideration to the inmate's institutional progress, his rehabilitative record, the severity of his offense and his ability to reintegrate into society.

In determining eligibility for parole in cases prior to November, 1973, the Parole Board generally based its parole decision on the inmate's institutional conduct, the probability of recidivism and the interests of society. 28 C.F.R. § 2.2 (1973). These standards allowed for discretionary application to particular cases and a more individualized treatment of parole applicants. In November, 1973, the Parole Board fashioned a new set of paroling policy guidelines for the purpose of "establish[ing] a national paroling policy, promot[ing] a more consistent exercise of discretion and enabl[ing] fairer and more equitable decision-making without removing individual case consideration." 28 C.F.R. § 2.20 (1976).

The operative provisions of the new guidelines, which have been amended only slightly since 1973, are structured in tabular form. In applying the guidelines, parole authorities determine the inmate's parole prognosis (or salient factor score) by classifying the inmate into one of four "offender characteristics" categories, ranging from poor to very good. The Parole Board then classifies the inmate's offense into one of six "offense characteristics" categories, ranging from lowest severity to greatest severity. The inmate's salient factor score and severity rating intersect on a chart to show a predicted period of time that the inmate should serve before being paroled. The predicted period of incarceration suggested by this mathematical computation is not binding on the Parole Board, 28 C.F.R. § 2.20(c), (d), (e) (1976), but merely serves as a guideline. Thus, "[w]here the circumstances warrant, decisions outside of the guidelines * * * may be rendered." 28 C.F.R. § 2.20(c). However, statistics reflect that the Parole Board adheres to the guidelines in 88.4 percent to 94 percent of the cases. *Kortness v. United States, supra* at 169.[5]

---

4. The recently enacted Parole Commission and Reorganization Act, Pub.L. No. 94–233, 90 Stat. 219, became effective on May 14, 1976, and effected some necessary structural, procedural and substantive changes in the national parole system. We need not review these modifications as they have no bearing on the issues presented in this case. We do note that, under the new Act, the District Court's sentencing options have been recodified at 18 U.S.C. § 4205. For the sake of convenience, we will

maintain consistency with the record and cite to the provisions of the statute which was extant at the time of Kills Crow's sentencing.

5. The Parole Board rated Kills Crow's offense behavior as "greatest severity" and accorded him a salient factor score of 7, which indicates a "good" parole prognosis. Under the guidelines, an inmate with these ratings would normally have to serve at least 45 months before being eligible for parole. Since Kills Crow was

The promulgation of these new guidelines injected more consistency and predictability, but somewhat less flexibility, into the parole process. However, as exemplified by *Kortness v. United States, supra,* changing the criteria for parole eligibility can have the effect of interfering with the sentencing intentions of a judge who imposed a § 4208(a)(2) sentence contemporaneous with the adoption of the new guidelines. In *Kortness,* the defendant was sentenced to three years under § 4208(a)(2) on the same day the new parole guidelines were published in the Federal Register. Upon parole consideration, application of the new guidelines to the defendant resulted in a determination that he would have to serve from 26 to 32 months before becoming eligible for parole. We observed that the sentencing judge, who was unaware of the new guidelines, might not have anticipated that the defendant would be required to remain incarcerated for nearly the entire term. By sentencing under § 4208(a)(2), the trial judge was entitled to believe that the defendant would receive meaningful parole consideration at or before the one-third point of his sentence. The change in the guidelines, with their unanticipated effect on the length of the defendant's incarceration, may have caused the sentencing judge to misapprehend the defendant's probable parole date. This misapprehension, while not casting the sentence into an illegal mold, may have resulted in a "critical error" in the sentencing process that could be redressed by the sentencing judge under 28 U.S.C. § 2255.[6]

In a jurisdictional sense, the *Kortness* doctrine is extremely limited. *Kortness* does not hold that the new parole guidelines are deficient or invalid, *Kortness v. United States, supra,* at 170 n. 4, nor does it hold that § 2255 can be used to launch broadbased attacks on the validity of those guidelines, *cf. Grasso v. Norton,* 520 F.2d 27 (2d

Cir. 1975) (jurisdiction under 28 U.S.C. § 2241); *Garafola v. Benson,* 505 F.2d 1212 (7th Cir. 1974) (§ 2241 jurisdiction). The essence of *Kortness* is succinctly described in *United States v. White,* 540 F.2d 409, 411 (8th Cir. 1976):

> [T]he *Kortness* decision is a limited one and does not give sentencing judges the authority to supervise, control, or second-guess the Parole Board. But the doctrine of *Kortness* does permit the district court to correct a sentencing error where the import of the judge's sentence has in fact been changed by guidelines adopted by the Parole Board contemporaneous with or subsequent to the imposition of that sentence.

Where an inmate relies on § 2255 to seek modification of a sentence which was imposed after the promulgation of the parole guidelines, *Kortness* is inapplicable and § 2255 jurisdiction is lacking. *Banks v. United States,* 553 F.2d 37 (8th Cir. 1977); *Fields v. United States,* 542 F.2d 472 (8th Cir. 1976); *see Jacobson v. United States,* 542 F.2d 725 (8th Cir. 1976); *United States v. Clinkenbeard,* 542 F.2d 59 (8th Cir. 1976); *accord United States v. DiRusso,* 548 F.2d 372 (1st Cir. 1976).

In the instant case, Kills Crow was sentenced nearly two years after the Parole Board adopted its new guidelines. While the sentencing court might not have anticipated that the Parole Board would maintain an almost unfaltering adherence to the predicted period of incarceration suggested by the guidelines, we conclude that a sentencing judge's mistaken belief in this regard does not amount to a "critical error" in the sentencing process. Unlike the sentencing judge in *Kortness,* the sentencing judge here had access to the new parole guidelines, which indicate approximately how long a person convicted of Kills Crow's offenses would normally remain incarcerat-

only sentenced to 36 months, he was designated by the Parole Board to serve his entire sentence.

**6.** Two other circuits have allowed resentencing in circumstances where the sentencing judge's intentions may have been frustrated by the adoption of the new parole guidelines. *United States v. Salerno,* 538 F.2d 1005 (3rd Cir. 1976) (§ 2255 jurisdiction); *United States v. Slutsky,* 514 F.2d 1222 (2d Cir. 1975) (under Fed.R.Cr.P. 35).

ed before parole. We cannot characterize the refusal of the Parole Board to deviate drastically from the guidelines as a "critical sentencing error" within the meaning of *Kortness*.[7] Accordingly, we conclude that *Kortness* is inapplicable to this case and that the District Court lacked § 2255 jurisdiction to modify Kills Crow's sentence.[8] The First Circuit reached a similar result in *United States v. DiRusso,* 548 F.2d 372 (1976).

██ This disposition is mandated if we are to properly observe and respect the separate functions of the sentencing judge and the Parole Board. When imposing a § 4208(a)(2) sentence, the sentencing judge is entitled to expect the defendant to receive meaningful parole consideration at or before the one-third point of the sentence, but is not entitled to expect the defendant to be paroled. *Jacobson v. United States, supra,* 542 F.2d at 727. While we sympathize with the District Court's disenchantment with the Parole Board's mechanical application of the parole guidelines to nearly all cases, the court's action in reducing Kills Crow's sentence cannot be sustained under § 2255. By sentencing Kills Crow pursuant to § 4208(a)(2), the judge remitted the parole decision to the Parole Board and, barring any substantial changes in the parole guidelines either contemporaneous with or possibly subsequent to the imposition of the sentence, the District Court had no jurisdiction under § 2255 to modify the sentence. Therefore, the judgment must be reversed.

### III.

██ The conclusion in this case lends further credence to our repeated admonition that *Kortness* does not grant sentencing judges a license to reduce lawful sentences whenever they disagree with a decision of the Parole Board. The sentencing judges' authority to reduce lawful sentences is narrow and defined. Within the 120-day period prescribed by Fed.R.Cr.P. 35, the inmate can file a motion seeking a reduction of his sentence. *See United States v. Slutsky,* 514 F.2d 1222 (2d Cir. 1975). After this 120-day period has expired, the sentencing judge loses jurisdiction to reduce a legal sentence unless the inmate can fit himself within the limited *Kortness* doctrine and invoke the court's jurisdiction under § 2255. If an inmate is alleging that the Parole Board erroneously denied parole, *Fields v. United States, supra,* or that he was denied due process because the Board's procedures were ignored or the parole guidelines were unfair, *United States v. Clinkenbeard, supra,* the attack is on the execution rather than the legality of the sentence. There-

7. Kills Crow's crime of assault with a dangerous weapon falls most appropriately into the "greatest severity" category of the guidelines. Therefore, even assuming the very best salient factor score, the guidelines indicate that he would have to serve three years or more before becoming eligible for parole. As previously indicated, Kills Crow was sentenced to three years under § 4208(a)(2).

8. Kills Crow's reliance on *Garafola v. Benson,* 505 F.2d 1212 (7th Cir. 1974), is misplaced for two reasons. First, *Garafola* involved an attack upon the Parole Board's guidelines which deprived § 4208(a)(2) inmates of meaningful parole consideration at or before the one-third point of their sentence. Under the guidelines, a § 4208(a)(2) prisoner was afforded an initial in-person parole hearing immediately after commencement of his sentence. Parole was generally denied at this hearing and the case was either continued beyond the one-third point of the sentence with no further hearing or the inmate was granted only a file review of his case at the one-third point. There was no in-person hearing at the one-third point. The court in *Garafola* concluded that this procedure failed to provide § 4208(a)(2) prisoners with meaningful parole consideration. Subsequent to, and partly because of, *Garafola* the Parole Board amended its guidelines to afford all § 4208(a)(2) prisoners an in-person hearing at the one-third point of their sentences. 28 C.F.R. § 2.14(e) (1976). Kills Crow was afforded such a hearing, and, thus, can present no *Garafola* claim. Second, the due process challenge to the procedures in *Garafola* was jurisdictionally premised on 28 U.S.C. § 2241. Here, Kills Crow explicitly disclaims any reliance on § 2241; rather, he attempts to invoke the *Kortness* doctrine and § 2255 jurisdiction on the basis of the alleged "critical sentencing error" committed by the sentencing judge. As we have held, *Kortness* does not apply to this case.

fore, the remedy lies exclusively in 28 U.S.C. § 2241.[9]

We note that Kills Crow has been released from custody since August, 1976, and his mandatory release date, as originally set, is October 3, 1977. Our holding does not prevent the Parole Commission from affording Kills Crow a parole hearing before reincarceration to determine whether or not Kills Crow should be returned to prison. *United States v. White, supra,* 540 F.2d at 412.

The judgment of the District Court is reversed.

**9.** It appears that Kills Crow's petition is alleging that the new parole guidelines are deficient because they deny inmates meaningful parole consideration. If so, the case is cognizable under § 2241. *Banks v. United States,* 553 F.2d 37 (8th Cir. 1977). However § 2241 jurisdiction exists only if the District Court has jurisdiction over the petitioner's custodian. *Braden v. Thirtieth Judicial Circuit Court,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *McCoy v. United States Board of Parole,* 537 F.2d 962, 964 (8th Cir. 1976). Kills Crow's custodian is the warden at the Federal Correction Institution at Sandstone, Minnesota, and there is nothing in the record to indicate that the District Court below, sitting in South Dakota, had jurisdiction over Kills Crow's custodian. Therefore, there is no basis for § 2241 jurisdiction.