UNITED STATES of America, Plaintiff,

v.

Paul T. WIGODA, Defendant.

No. 74 CR 291.

United States District Court,
N. D. Illinois, E. D.

July 1, 1976.

Samuel K. Skinner, U. S. Atty., Jeremey D. Margolis, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Etta J. Cole, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

*Motion for Reduction of Sentence*

### I.

This cause is before the Court on defendant's motion for a reduction of sentence pursuant to Rule 35 F.R.Crim.P. On December 2, 1974, this Court sentenced defendant to a prison term of one year after a jury found him guilty of subscribing to a false income tax return for 1969 by underreporting his gross income, in violation of 26 U.S.C. § 7206(1). On appeal, the Seventh Circuit affirmed the conviction, *United States v. Wigoda*, 521 F.2d 1221 (7th Cir. 1975), and certiorari was denied by the Supreme Court on March 1, 1976.[1] *United States v. Wigoda*, 424 U.S. 949, 96 S.Ct. 1421, 47 L.Ed.2d 355, 44 U.S.L.W. 3494.

---

1. Under Rule 35 F.R.Crim.P., a "court may reduce a sentence . . . within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding a judgment of conviction." Defendant's motion falls well within the 120 day time limit and is therefore appropriate for Rule 35 consideration.

Defendant commenced serving his sentence at the Federal Correctional Institution at Lexington, Kentucky on January 9, 1976.

On April 6, 1976, defendant moved this Court pursuant to Rule 35 F.R.Crim.P. to reduce his sentence to a four month term, or in the alternative, to resentence him to a term of one year and one day, subject to the provisions of 18 U.S.C. § 4208(a)(1), so that the Court could fix defendant's eligibility for parole at a time certain.[2] Though the government opposed the reduction of sentence portion of the motion, it did not oppose the alternative request for resentencing to a year and a day, which would enable the Court to set defendant's eligibility for parole after the expiration of one-third of his sentence. We granted defendant's alternative motion, and resentenced him to a term of one year and one day. In pertinent part the Order provided:

> IT IS HEREBY ORDERED that the sentence of one year heretofore imposed herein on the defendant, Paul Wigoda, be and the same is hereby vacated, and the said defendant is hereby resentenced to the custody of the Attorney General for a period of one year and one day, subject to the provisions of 18 U.S.C. Section 4208(a)(1); the Court further designates that the defendant shall become eligible for parole at the expiration of 4 months of said sentence.[3]

On May 18, 1976, defendant appeared before officers of the Parole Commission for purposes of a parole determination hearing. Among the materials before the hearing officers at that time was a staff recommendation from the Lexington facility which, after an analysis of defendant's institutional adjustment and release plans, contained the following "Evaluation and Recommendation for Release:"

> In essence, this conviction marks Mr. Wigoda's sole conflict with the law. Notwithstanding the seriousness of this offense with regard to the alleged source of the unreported income involved, we view Mr. Wigoda as a situational offender who lacks criminal orientation. His background and attitude are contraindicative of further involvement in illegal activities and we feel the lesson of confinement has been fully internalized. His adjustment at Lexington has been outstanding in every respect and he has the personal resources and capability to adjust positively in the community at any time. We recommend parole to an approved plan.

Additionally, through the "salient factor" tabulation, on which defendant scored the highest possible total, the hearing officers were again made aware of the lack of past criminal involvement by the defendant, as was also reflected in the presentence report submitted to this Court prior to sentencing and to which we assume the hearing officers had access.

Under 18 U.S.C. § 4207, all of these materials, in addition to "recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge," § 4207(4), are to be considered by the hearing officers in making a determination regarding parole. And under § 4206(b), where parole is denied, the hearing officers are directed to "state with particularity the reasons for such denial."

However, in a written Notice of Action dated May 28, 1976, and received by defendant on June 7, 1976, defendant was informed that the hearing officers had determined to deny him parole, and to continue

---

**2.** As explained by defendant's counsel, the motion was prompted by the Congressional passage and subsequent Presidential approval on March 15, 1976 of Public Law 94–233, the Parole Commission and Reorganization Act, see 90 Stat. 219; 1976 U.S.Code Cong. & Admin. News p. 567; 12 Weekly Compilation of Presidential Documents p. 451, which repealed in part, amended in part and reorganized in part the parole sections of 18 U.S.C. § 4201 et seq. Section 4205(f) of the new law effectively repealed the former Section 4202, and raised the minimal length of a prison sentence required to be imposed for an individual to become eligible for parole after serving one-third of his sentence, from the original one hundred and eighty days to more than one year.

**3.** Under Public Law 94–233, see Note 1 supra, the substantive provisions of the former § 4208(a) have been recodified under § 4205(b).

his release date to the expiration of his sentence with only the following explanation:

> Your offense behavior has been rated as moderate severity and you have a salient factor score of 11. You have been in custody a total of four months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 12–16 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted.[4]

On June 17, 1976, defendant filed the instant motion for reduction of sentence alleging that the denial of parole was arbitrary and capricious, and in violation of the applicable statutory and regulatory provisions, since the Commission failed to give defendant meaningful consideration regarding his parole eligibility, applied improper standards in evaluating the nature of his crime, failed to consider favorable staff and institutional reports as required under § 4207, failed to "state with particularity" its reasons for denying him parole in violation of § 4206(b), and in effect usurped the sentencing powers of this Court.

## II.

Though not contesting the timeliness of defendant's motion or the propriety of considering defendant's application under Rule 35, the government urges this Court not to act as a "super parole board," but rather to require defendant to pursue the normal administrative and judicial channels for review of the hearing officers' determination, and not to permit defendant to bypass the prescribed statutory remedies through collateral means. While the government's argument has some facial appeal, and may be appropriate in certain instances, we feel that the realities of the defendant's situation in terms of the statutory timetable of administrative and subsequent judicial appeals, requires this Court to exercise its discretionary powers under Rule 35 in what we feel to be the interests of justice. Though we are convinced that under the applicable statutory and regulatory standards the denial of parole to this defendant was improper, and are fairly confident that given the opportunity for an administrative appeal on both a regional and national level the determination of the hearing officers would be reversed; since the administrative appellate process would be unduly time consuming,[5] and would unjustly extend the prison service time of this defendant, we opt to exercise our powers under Rule 35 to provide for defendant's release within the period originally contemplated by this Court at the time of sentencing.

We note at the outset that the questions presented in this action are not matters of first impression in federal courts generally, or in this Circuit in particular. Rather, the somewhat vexatious problem of the conflict between the Parole Commission's exercise of its discretion as to the grant or denial of parole in the face of a specific sentencing purpose and plan by the trial judge has been dealt with extensively in the reported case law. See e. g., *United States v. Manderville*, 396 F.Supp. 1244 (D.Conn.1975);

---

4. The effect of this decision is not only to deny parole to the defendant at the present time, but also to foreclose any further parole consideration and to require defendant to serve his entire one year and one day sentence less any good time allowance.

5. 18 U.S.C. § 4215(a) provides that upon an appeal from the denial of parole to the Regional Director of the Parole Commission, the Regional Director has thirty days within which to render a decision. An adverse decision by the Regional Director is then appealable to the National Appeals Board which, under § 4215(b), has sixty days within which to render its decision. Thus, even assuming that defendant could file his respective appeals within a day of each decision, it is still possible that the entire appeals process could take three months. Further, assuming an adverse decision at the National Appeals Board level, a subsequent challenge in federal court under 28 U.S.C. § 2241 would add additional time to an already lengthy review process. In fact, it is conceivable that a final determination on the parole issue could come as late as the end of defendant's one year and one day prison term.

*United States v. Slutsky,* 514 F.2d 1222 (2nd Cir. 1975); *Grasso v. Norton,* 520 F.2d 27 (2nd Cir. 1975); *Lupo v. Norton,* 371 F.Supp. 156 (D.Conn.1974); *United States v. Randle,* 408 F.Supp. 5 (N.D.Ill.1975). So too, there is no dearth of reported decisions dealing with the requirement that the Parole Commission follow its own guidelines, *Billiteri v. United States Parole Board,* 385 F.Supp. 1217 (W.D.N.Y.1974); *Lupo v. Norton, supra; Grasso v. Norton,* 371 F.Supp. 171 (D.Conn.1974); *Diaz v. Norton,* 376 F.Supp. 112 (D.Conn.1974), and that *meaningful* consideration be given to every parole applicant regardless of the time of his hearing in relation to his entire prison term. See, e. g., *Garafola v. Benson,* 505 F.2d 1212 (7th Cir. 1974); *Grasso v. Norton,* 520 F.2d 27 (2nd Cir. 1975); *Salazar v. United States Board of Parole,* 392 F.Supp. 1073 (E.D. Mich.1975); *Kehoe v. Jensen,* 400 F.Supp. 899 (M.D.Pa.1975).

 Thus, the very minimum that is required of the Parole Commission is that its consideration and determination of a prisoner's eligibility for parole must be meaningful and in compliance with the statutory standards and its own regulations. Where such a review is afforded by the Commission, a court will not interfere with the final determination. Where, however, a court finds that the applicable standards were not adhered to, and that the Commission's determination was not meaningful or in accordance with the applicable regulatory standards, federal court intervention is appropriate.

### III.

The principal ground upon which defendant was denied parole appears to be based upon the Commission's guidelines, which indicate that an individual falling within the "moderate" classification regarding the severity of his crime, and who has a "very good" offender characteristic rating, should serve between 12 to 16 months in prison prior to release on parole. The very guidelines upon which the Commission relied recognize the possibility that not every offender will fall within the four corners of the chart, and that in many instances a departure from a cold statistical analysis would be warranted.

Thus, though the guidelines were established to "promote a more consistent exercise of discretion," 28 C.F.R. § 2.20(a), "(t)hese time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered." 28 C.F.R. § 2.20(c). See also, "Proposed Rules and Regulations, 41 *Fed.Reg.* No. 93 at 19330 (May 12, 1976).

In *Garafola v. Benson,* 505 F.2d 1212, 1214 (7th Cir. 1974), Judge Tone reviewed the relevant materials normally considered by the Parole Board in conjunction with its guidelines in reaching a determination regarding eligibility for parole:

In 1973 the Board of Parole adopted a table of guidelines for use in deciding the length of time a prisoner should serve before he is released on parole. 38 F.Reg. 31942 (1973), 28 C.F.R. § 2.20 (Rev. July 1, 1974). These guidelines, which set out point ratings for offenses and offender characteristics, represent an effort by the Board to "establish a national paroling policy" and to promote consistency and fairness in its parole decisions "without removing individual case consideration." 28 C.F.R. § 2.20(a) (Rev. July 1, 1974).

The Board continues to base its exercise of discretion in part on considerations outside the guidelines. According to an affidavit of the Board's Chairman printed as an appendix in *Battle v. Norton,* 365 F.Supp. 925, 932–933 (D.Conn.1973):

"The guideline ranges are set for cases with good institutional performance. A hearing panel may render a decision either above or below the guideline range if it is justified by a sufficient explanation. Circumstances in which the Board may consider decisions below the guidelines include exceptionally good institutional performance; . . . and cases in which the Board feels that the clinical risk prognosis is substantially better than indicated by the offender characteristics

score." Thus, as Judge Jon O. Newman stated in *Grasso v. Norton,* 371 F.Supp. 171, 173 (D.Conn.1974) (*Grasso I*), even though prison performance "is not a factor that determines an inmate's rating on the offender characteristic scale," it "is not wholly excluded from parole decision making." On the contrary, the Board's regulations provide that among the factors the Board may consider in its parole decision-making, in addition to the guidelines, are "changes in motivation and behavior," "institutional experience," and "comments by hearing examiners; evaluative comments supporting a decision, including impressions gained from the hearing." 28 C.F.R. § 2.19(d), (f) and (j) (Rev. July 1, 1974). Thus, according to the Board's rules, the prisoner's institutional performance and achievement as well as the impressions gained and the evaluation made at the hearing are factors in the parole decision-making process of the Board.

■ The written decision denying parole herein reflects none of the considerations articulated by Judge Tone and contained in the applicable regulations. Though the Notice of Action recites that the hearing officers felt that a decision outside the guidelines would not be appropriate, the lack of any supporting reasons or explanations for such a determination makes it difficult, if not impossible, to determine whether defendant has been denied parole for appropriate reasons. While we do not hold that in every parole determination the Commission must necessarily review all of the factors noted in the regulations; where, as here, the materials before the hearing officers point very strongly toward the grant of parole, some explanation beyond the adoption of boilerplate language is required.

Despite defendant's excellent offender characteristics, institutional adjustment and staff recommendations, he was denied parole solely upon the basis of the Commission's guidelines which would require him to remain incarcerated a minimum of twelve months before becoming eligible for parole.

Under the one-third parole eligibility provisions of § 4205(f), the effect—though certainly not the result—of the parole guidelines is to sentence defendant to a minimum term of 36 months, so that he would become eligible for parole at the expiration of one-third of his "sentence," or twelve months. Thus, in light of this Court's sentence of one year and one day, defendant would never be eligible for parole.

The fact that neither the hearing officers nor the Commission's guidelines appear to give little, if any, consideration to the sentencing court's judgment as reflected in the length of the actual sentence imposed, leads us to share the views articulated by Judge Newman in *Lupo v. Norton,* 371 F.Supp. 156, 163 (D.Conn.1974):

Indeed, judges may well wonder why the Board's guideline table and its specified reasons for parole denial make no reference to the length of sentence imposed. They may even wonder why parole guidelines specify various *time periods* of confinement correlated with various offense categories, rather than various *fractions of the sentence imposed* correlated with various offender characteristics. Under the latter approach, the Board could still ameliorate unjustified sentence disparities by prudent departure from such guidelines. By not including sentence length as a variable on the guideline table, the Board runs the risk of averaging time spent in prison for particular offenses, without regard to the factors that led sentencing judges to impose terms of different lengths. Without denying the vices of some sentencing disparity, one may question a solution that would rely in part on averaging time actually served. Fortunately, the Board has demonstrated that it has not become ritualistically attached to its guideline table. See *Battle v. Norton, supra* 365 F.Supp. at 933 (Sigler affidavit). And this Court does not doubt that the Board, in some way, takes sentence lengths into account in making parole decisions. What remains troublesome is that neither the Board's table nor its stated reasons

for parole denials tell prisoners what difference the sentence makes.

Where, however, as in this instance, it appears that the Commission through its hearing officers "is blindly adhering to a policy that a certain minimum amount of time must be served . . . [solely based upon statistical guidelines] . . ., it may well be arbitrary and capricious, an unwarranted intrusion into the judicial sentencing process, and in excess of the [Commission's] statutory authority." *Soloway v. Weger,* 389 F.Supp. 409, 411 (M.D.Pa.1974).

When this Court resentenced defendant to a term of one year and one day, and specified that he should become eligible for parole after the expiration of one-third of his sentence, we intended to leave the parole determination to the sound discretion of the Commission, with the unspoken, but nevertheless clear, proviso that defendant be given a *meaningful* parole consideration at that time, as required by law. By its blind adherence to its raw statistical guidelines, however, it appears that the Commission, in an effort to achieve more uniformity in its determination, has actually obstructed its own ability to carry out the desires of the sentencing judge. Thus, though the result of such unswerving adherence to the guidelines may very well result in more uniformity, it could—and in this instance, in our judgment does—result in more injustice. Accord, *Garcia v. United States Board of Parole,* 409 F.Supp. 1230, 1239 (N.D.Ill.1976).

As noted by Judge Will in *United States v. Randle,* 408 F.Supp. 5 (N.D.Ill.1975), and *Garcia v. United States Board of Parole, supra,* the effective way for a judge to exercise his sentencing discretion and still permit the Commission to exercise its discretion, without allowing it to usurp the sentencing judge's function, is for the judge to impose a sentence which, less statutory good time, results in the maximum period the judge believes is appropriate, whether or not it fits within the guidelines.

Though in most instances it may be difficult for a sentencing court to take any action in response to an unexpected—and in the court's judgment, unwarranted—decision by the Commission, in cases such as this we are not left without a remedy. Since defendant's Rule 35 motion is timely, we may reduce his sentence to conform with our original sentencing intentions.

As stated by Judge Blumenfeld in *United States v. Manderville,* 396 F.Supp. 1244, 1249 (D.Conn.1975):

While courts have correctly expressed reluctance to function as super-parole boards, *see, e. g., Wiley v. United States Board of Parole,* [D.C., 380 F. Supp. 1194], *supra,* they should not be reluctant to modify sentences when assumptions which they entertained at the time of sentencing with regard to parole possibilities have subsequently been invalidated. That substantially is the thrust of *United States v. Slutsky,* 514 F.2d 1222 (2d Cir., 1975), in which the court remanded the appellants' cases for resentencing in light of the subsequently learned fact that the 18 U.S.C. § 4208(a)(2) sentences which were originally imposed would not afford the appellants serious parole consideration at an early point in their respective sentences. *See also Grasso v. Norton, supra.* The court held:

"Since in all probability the appellants will not receive the parole treatment envisioned by the sentencing judge, there should be an opportunity for reconsideration in light of all recent developments in the area. An unfortunately mistaken assumption about the effect of a section 4208(a)(2) sentence perhaps does not rise to the level of a sentencing judge's mistaken impression of a defendant's prior criminal record. *See United States v. Malcom,* 432 F.2d 809, 815–16 (2d Cir. 1970). There is no question that the decision of whether actually to release the appellants would remain with the Board of Parole regardless of when their cases were considered. But the parole implications of a sentence are a necessary and important factor for the consideration of the sentencing judge. And when, as here, there has been a timely motion for

reduction of sentence, and the mistake is easily rectified by providing for resentencing, the interests of justice mandate such a procedure." *United States v. Slutsky, supra* 514 F.2d at 1229.

Here, we genuinely believed that defendant would be given a meaningful parole hearing at the expiration of one-third of his sentence, as required by the law. Instead of reaching a good faith parole determination, however, it appears that the Commission has, instead, decided to in effect resentence defendant to a longer term than contemplated by this Court.

As of this date, defendant has served slightly less than six months of his sentence at the Lexington facility, which is substantially more than the one-third term required for statutory parole eligibility. Under 18 U.S.C. § 4161, since defendant's sentence was for more than one year, he is eligible for good time credits of six days for each month served. Assuming the maximum good time credits, defendant would probably be released from Lexington in about four months. As noted above, if defendant is compelled to proceed through administrative and judicial appeals of his parole denial, the whole process would most likely extend beyond his release date, which would moot his claim. Since we find the action by the hearing officers to be violative of the statutory scheme and the Commission's regulations, as well as a subversion of this Court's sentence, we are left with no alternative but to grant defendant's motion and to reduce his sentence.

We therefore reduce defendant's sentence to time served, thereby requiring his immediate release.