**UNITED STATES of America, Plaintiff,**

**v.**

**Richard H. SNOOKS, Defendant.**

**No. 79–00109–01–CR–W–1.**

United States District Court,
W. D. Missouri, W. D.

Aug. 13, 1980.

Ronald S. Reed, Jr., U.S. Atty., Cynthia A. Clark, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Benjamin D. Entine, Asst. Federal Public Defender, Kansas City, Mo., for defendant.

MEMORANDUM OPINION AND ORDERS FURTHER DEFERRING RULING ON DEFENDANT'S RULE 35 MOTION

JOHN W. OLIVER, Chief Judge.

I.

On February 22, 1980, for reasons fully stated in a memorandum filed that day, we deferred ruling defendant's timely filed Rule 35 motion pending further development of the relevant and material factual circumstances. Although defendant's motion is still not yet in proper posture for

final determination, it is appropriate that we presently rule one question of law which the government belatedly raised on July 3, 1980 in a supplemental response filed in regard to this Court's February 22, 1980 order.

In brief, the government now seeks to change its position in regard to whether a district court has power and jurisdiction to rule a timely filed Rule 35 motion after the expiration of the 120 day period provided in that Rule. Because of the obvious importance of the question presented, we believe it appropriate to state our conclusion that the government's new position is not tenable under the controlling rules of decision of the Eighth Circuit which this Court is under duty to apply.

## II.

The files and records in this case show that defendant's Rule 35 motion was timely filed on February 8, 1980, well within the 120 day period after the imposition of sentence on October 26, 1979. The government's original suggestions in opposition to that motion, filed February 14, 1980, did not in any way suggest or contend that this Court's power and jurisdiction to rule a timely filed Rule 35 motion was limited and confined to the 120 day period provided in that rule.

In Part IV of our February 22, 1980 memorandum we noted that "the suggestions filed in support and in opposition of the pending Rule 35 motion do not reflect that the Parole Commission has taken any action in connection with any application for parole which may have been made by the defendant." We therefore entered the following orders on February 22, 1980:

ORDERED (1) that the government shall make appropriate inquiry and thereafter prepare, serve and file an appropriate response which will state whether the defendant has made application for parole and what action, if any, the Parole Commission may have taken in connection therewith. The government shall attach to its response authenticated copies of all documents which relate thereto, together with copies of the defendant's Bureau of Prisons central file which will reflect all determinations made by the Bureau of Prisons and the Parole Commission in connection with the Parole Commission's execution of the § 4205(b)(2) sentence imposed by this Court. It is further

ORDERED (2) that the Court retains jurisdiction of the pending Rule 35 motion in order to develop the relevant and factual circumstances and until further order of Court. It is further

ORDERED (3) that the Clerk transmit a copy of this memorandum opinion and orders to the Parole Commission so that it be advised of this Court's view of the applicable law as above stated. The Parole Commission is invited to make any response which it may deem to be appropriate under the circumstances.

The government's response to the orders entered by this Court on February 22, 1980 was filed on March 19, 1980. That response did not suggest or intimate that this Court's jurisdiction to rule defendant's timely filed Rule 35 motion had somehow expired shortly after those orders were entered. Indeed, the government's March 19, 1980 response, to which it attached an affidavit of a Prerelease Analyst for the United States Parole Commission (to which four exhibits were in turn attached) argued that "this Court, being apprised of the parole hearing consequences, should proceed to rule upon the Rule 35 motion accordingly" and that defendant's "original sentence should not be reduced." The Parole Commission did not respond to this Court invitation that it give this Court the benefit of its view of the applicable law.

Defendant's response, filed March 26, 1980, to the government's March 19, 1980 response, placed in substantial dispute the government's factual contention that the defendant had been accorded "meaningful parole consideration." Defendant's response prayed that the Rule 35 motion should be granted or in the alternative that such motion be set for plenary evidentiary hearing.

The Court advised counsel that the alternative prayer for a plenary evidentiary

hearing would be granted and requested that the parties stipulate to all undisputed factual circumstances in advance of the hearing. Counsel kept the Court advised of the commendable progress being made in regard to their anticipated agreement on a stipulation of facts and the plenary evidentiary hearing was set for July 3, 1980, the earliest open date on this Court's crowded docket.

The parties had completed their stipulation by the time of the hearing. Paragraph 1(a) of the stipulation filed July 3, 1980 establishes the parties' agreement that "the United States Parole Commission applies the same criteria to prisoners sentenced under Title 18, United States Code, Sections 4205(a), 4205(b)(1), and 4205(b)(2), when making decisions concerning suitability for parole release."

Paragraph 3 of that stipulation states that:

There is no provision [in the Parole Commission's Guidelines] requiring that special consideration be given to the fact of the exact sentence chosen by the sentencing court within the guidelines for consideration of the existence of a sentence under the provisions of Title 18, United States Code, Section 4205(b)(2). Identical criteria are applied to prisoners sentenced under the aforementioned provision as are applied in cases of the individuals sentenced under the provisions of

Title 18, United States Code, Sections 4205(a) and 4205(b)(1).

The July 3, 1980 stipulation establishes that defendant's factual claim that the Parole Commission's Guidelines give no consideration to the fact "that a sentence has been imposed under the provisions of 18 United States Code, Section 4205(b)(2)" and that defendant's factual claim that "the statutory requirements of Section 4205(b)(2) are ignored by the Parole Commission in determining an inmate's eligibility for release" are not based on "conjecture" and "speculation," as the government argued in its March 19, 1980 response.[1]

The question of this Court's power and jurisdiction to rule defendant's timely filed Rule 35 motion was presented for the first time on July 3, 1980 when the government filed its supplemental response to the February 22, 1980 orders which deferred this Court's ruling of that motion. In a supplemental response filed that day the government candidly stated: "the government *now* takes the position that this Court is without jurisdiction to reduce defendant's sentence under Rule 35 at this late date." (emphasis ours). The government argues that under the "aegis" of three cases decided by the Fourth, Fifth and Ninth Circuits "it appears that this Court would be exceeding its jurisdiction if it now reduced defendant's sentence." At page 3 of its July 3, 1980 supplemental response the government reiterated its new "jurisdictional" argument and stated:

1. Other paragraphs of the stipulation suggest that the Parole Commission not only disregards the sentencing judge's use of § 4205(b)(2), it also apparently refuses to give any consideration to the recommendation of the Bureau of Prisons that the defendant in this case be granted parole "at the discretion of the United States Parole Commission in light of his B-2 sentence." The parties' July 8, 1980 stipulation contained the following paragraphs:

8. Carol E. Davis, Case Manager, United States Penitentiary, Leavenworth, Kansas, submitted to the United States Parole Commission an evaluation of Snooks' institutional adjustment, including a recommendation that "Mr. Snooks be granted parole at the base of the Parole Commission guidelines or at the discretion of the U.S. Parole Commission in light of his B-2 sentence." [See Government's Exhibit B, Response to Court's Order

Deferring Ruling of Defendant's Rule 35 Motion, filed March 19, 1980.]

9. At the parole hearing held on February 26, 1980, Thomas M. Dawson, Counsel for Richard H. Snooks, specifically requested that consideration be given to early release beneath the guidelines, in light of his institutional adjustment, and the existence of a sentence under the provisions of Title 18, United States Code, Section 4205(b)(2).

10. The recommendation of the United States Parole Commission hearing examiners on February 26, 1980 stated that consideration had been given to Snooks' high offense severity rating and salient factor score of 10, and included a recommendation in accordance with the Parole Commission guidelines, without reference to sentencing under the provisions of Title 18, United States Code, Section 4205(b)(2).

Granted the Court may do what it will concerning a defendant's sentence within 120 days, but, as pointed out earlier, a court may not purposely withhold ruling a Rule 35 motion to review the outcome of a parole hearing.".

The cases from Circuits other than the Eighth, upon which the government bases its belated "jurisdictional" argument, do not support the government's position. The rules of decision in the Eighth Circuit, which this Court is under duty to apply, are clearly to the contrary. We discuss the Eighth Circuit's rules of decision in the next part of this memorandum opinion.[2]

### III.

The government has not attempted to answer defendant's argument that this Court is under duty to apply the Eighth Circuit's most recent construction of Rule 35, in *United States v. Williams*, 573 F.2d 527 (8th Cir. 1978). Any suggestion that the government may have made that this Court should not apply the principles of law enunciated in that case would have been untenable.

*Williams*, on its facts, involved a timely filed Rule 35 motion to reduce a two year sentence imposed by Chief Judge Paul X Williams of the Western District of Arkan-

sas. Although the Rule 35 motion was timely filed 87 days after sentence, Chief Judge Williams was not able to rule the motion until 167 days after sentence had been imposed.[3] He granted the motion, reduced the defendant's sentence to time served and placed the defendant on probation.

The government immediately petitioned the Court of Appeals for the Eighth Circuit for a writ of mandamus to direct Chief Judge Williams to vacate his order granting the defendant's Rule 35 motion. The government in *Williams* urged, as the government does in this case, that the Court of Appeals adopt a highly technical construction of Rule 35 that "once the 120 days passed, the district court was without the power to reduce a valid sentence." 573 F.2d at 528.

The Court of Appeals' panel, composed of then Chief Judge Gibson and Judges Lay and Ross, distinguished the cases upon which the government attempted to rely and concluded that the government's petition for writ of mandamus should be denied for the following reasons:

We hold that in this case the district court had the power to reduce Lambert's sentence, even after the 120-day period

**2.** It is unnecessary to reiterate our view of what the government again attempts to read into *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). On page 4 of our February 22, 1980 memorandum we pointed out that the government's reading of *Addonizio* was "much too broad for the reason that *Addonizio* dealt solely with the narrow jurisdictional scope of § 2255." We added that:

Addonizio did not in any way overturn the following principle of law stated by the Court of Appeals for the Eighth Circuit in *Edwards* [574 F.2d 938 (8th Cir. 1978)]: "The Parole Board must exercise its discretion in a manner consistent with the federal Constitution, applicable statutes, its own published rules, and the mandate given it by the sentencing judge at the time of sentencing. Part of the sentencing judge's mandate is fulfillment of his objective expectations regarding meaningful consideration of parole applications of prisoners sentenced under section 4205(b)(2)." [*Id.* at 942]
We add that our careful consideration of both *Greenholtz v. Inmates of Nebraska Penal*

*and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) and *United States Parole Commission v. Geraghty*, —— U.S. ——, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), both cited in the government's July 3, 1980 supplemental response, does not change our view of how *Addonizio* must be read. The Court did not reach the merits of the questions presented in *Geraghty*. The Third Circuit opinion in that case, reported in 579 F.2d 238, shows that those questions are both substantial and difficult of decision.

**3.** Personal inquiry of Chief Judge Williams established that the defendant's Rule 35 motion involved in *Williams* was based on defendant's claim that information in the presentence report relating to the defendant's physical condition was inaccurate. Appropriate inquiry in regard to defendant's actual physical condition simply could not be completed and was not completed until shortly before Chief Judge Williams concluded that defendant's claim was well founded and that the motion should be granted.

had passed, since the Rule 35 motion was filed within the 120-day period. This rule is recognized by both the Third and Ninth Circuits. See *United States v. Janiec*, 505 F.2d 983 (3d Cir. 1974), cert. denied 420 U.S. 948, 95 S.Ct. 1331, 43 L.Ed.2d 427 (1975); *Leyvas v. United States*, 371 F.2d 714 (9th Cir. 1967). [573 F.2d at 529].

*Leyvas v. United States*, 371 F.2d 714 (9th Cir. 1967), the Ninth Circuit case cited with approval by *Williams* to illustrate the Ninth Circuit rule, involved a construction of Rule 35 before the original 60 day period was extended to 120 days by amendment in 1966.

*Leyvas* concluded that:

While Rule 35 states that the court may reduce a sentence "within 60 days," the rule generally has been interpreted as relating that time period to the filing of a motion for such relief. See *Dodge v. Bennett*, 1 Cir., 335 F.2d 657; *United States v. Koneski*, 4 Cir., 323 F.2d 862; *Johnson v. United States*, 5 Cir., 235 F.2d 469, 461.

We hold that, in view of the timeliness of Leyvas' motion for reduction of sentence, the district court's action thereon

4. *Leyvas* also quoted the following from 8 Moore's *Federal Practice*, 2d ed. § 35.02[a] at page 35–4:

It should be noted that the period is not defined as the time within which the motion may be made, but is rather the time within which the *court may act*. Technically, this permits the court's failure to act upon a motion to preclude relief. The present language of the Rule is satisfactory as a limitation upon the Court's power to act *sua sponte*, but it should be rephrased to permit the court to act upon a motion of defendant as long as it is made within the period. Despite the deficiency in the Rule, however, it appears that the latter interpretation is followed by most courts, and acquiesced in by most prosecutors, as a matter of salutary practice. (Emphasis in original.) [371 F.2d 719]

While this Court agrees with Professor Moore's view that most, if not all, courts give Rule 35 the same interpretation as did the Eighth Circuit in *Williams* and that most prosecutors acquiesce in such an interpretation, we agree with Professor Moore's suggestion that the Rule should be clarified to remove any possible doubt about the matter.

*United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), stated the applicable

after the expiration of the sixty-day period was not thereby invalidated. [371 F.2d 719] [4]

*United States v. Janiec*, 505 F.2d 983 (3d Cir. 1974), cert. denied 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975), cited by *Williams* to illustrate the Third Circuit rule, involved the validity of a district court's grant of a timely filed Rule 35 motion almost two years after sentence was imposed. The Third Circuit noted in *Janiec* that the United States Attorney for the District of New Jersey was in the group of prosecutors which acquiesced in the interpretation most courts gave Rule 35. The Third Circuit stated:

The United States Attorney, in his supplemental brief, concedes that there is substantial authority to support the authority of the district court to reduce a sentence under F.R.Crim.P. 35 more than 120 days after the sentence to be changed, where a motion for such reduction has been filed within the 120-day period, even though that Rule provides: "The court may reduce a sentence within 120 days after the sentence is imposed . . . ." [505 F.2d 985 fn.3].

pre-Rule federal law which permitted reduction of a sentence during the term of court the sentence was imposed. (See Annotation in 168 A.L.R. 706, which reflects the conflict between the federal rule and that existing in a majority of State courts). Original Rule 45(c), (rescinded in 1966 as unnecessary in view of the 1963 amendment of 28 U.S.C. § 138, eliminating terms of court) abolished terms of court. In light of original Rule 45(c)'s abolition of terms of court and in light of the obvious desire to continue pre-Rule federal law which, contrary to the rules of most State courts, recognized power in the district court, to reduce sentences during term, some time limitation for the filing of a Rule motion obviously had to be included in the new rule.

Experience established that the original 60 day period originally provided was too short and thus the period was extended to 120 days in 1966. The Rule in no way was intended to limit or circumscribe the well recognized power and jurisdiction of a federal district judge to reduce a sentence. As Professor Moore suggests, we believe Rule 35 should be amended in a manner that would remove any doubt about its original purpose.

*Janiec* cited *Leyvas*, most of the cases cited in that case, additional decisions from the First and Fourth Circuits, and numerous district court decisions.[5]

Our discussion of *Williams* and the two cases upon which *Williams* is based, makes it clear that this Court, contrary to the government's new position, has power and jurisdiction to rule defendant's timely filed Rule 35 motion. In the next part of this memorandum we discuss two district court cases and other considerations which relate to the question of when a Rule 35 motion involving questions similar to those presented in this case should be ruled.

## IV.

*United States v. Manderville*, 396 F.Supp. 1244 (D.Conn. 1974), involved a two year sentence imposed by Judge Blumenfeld on November 4, 1974. On February 21, 1975 the Parole Board denied defendant's application for parole and continued his case to the expiration of his two year sentence. On March 3, 1975 one day before the expiration of the 120 day time limitation of Rule 35, the defendant filed a Rule 35 motion for reduction of sentence in which he argued that "an affirmative exercise of the court's discretion is appropriate here because only by reducing his sentence can the court approximately effectuate its original sentencing goals which were, he maintains, undermined by the Board's action." [*Id.* at 1245]. Judge Blumenfeld determined that he had jurisdiction to conduct an appropriate plenary evidentiary hearing and to rule the timely filed Rule 35 motion after the expiration of the 120 day period. Judge Blumenfeld relied upon the same cases upon which the Court of Appeals for the Eighth Circuit relied in its construction of Rule 35 in *Williams* and concluded that:

It has been held that the 120-day period applies to the time within which the

motion for reduction of sentence must be filed and not the time within which the court must act on that motion. *See Leyvas v. United States*, 371 F.2d 714, 719 (9th Cir. 1967); *Fuentes v. United States*, 371 F.Supp. 92 (D.P.R. 1973); *United States v. Ursini*, 296 F.Supp. 1152 (D.Conn. 1968); *cf. United States v. Janiec*, 505 F.2d 983, 985 n.3 (3rd Cir. 1974), *cert. denied*, 420 U.S. 948, 95 S.Ct. 1331, 43 L.Ed.2d 427 (1975); *Dodge v. Bennett*, 335 F.2d 657 (1st Cir. 1964). I agree with this line of authority and thus hold that jurisdiction is present to act upon the defendant's timely filed motion. [396 F.Supp. 1245 n.1].

Judge Blumenfeld, after conducting an appropriate plenary evidentiary hearing, and long after the expiration of the 120 day period, made the following findings of fact in regard to the manner in which the Parole Board had made its determination. He found that "in considering the defendant's application for parole, the Board applied to him the policy guideline table" [*Id.* 1246]. He found that "the hearing examiner rated the defendant's offense behavior as being in the 'very high' severity category and determined his salient factor score (meaning parole prognosis) to be within the 'good' range." [*Id.* at 1247]. He also found that a mechanical application of the guidelines produced the following result:

With that combination of parameters, the guideline table calls for a period of incarceration of between 36 and 45 months, clearly more than the 19 months which the defendant would serve in prison following the deduction of good time credit from his two-year sentence. The hearing examiner panel of the Parole Board determined that a decision outside of the guideline range was not warranted in the defendant's case and thus continued his case to the expiration of sentence. [*Id.* at 1247].

---

**5.** The Third Circuit in *Janiec* also quoted the following from 2 Wright, *Federal Practice and Procedure*, § 587 at page 573:

Literally read, the time limits then would apply to the order of the court reducing sentence and the court could not act after the time had gone by even though a prompt motion had been made. Fortunately the

courts have avoided so singular a result and have interpreted the time period as related to the filing of a motion for reduction of sentence. [505 F.2d at 985 n.3].

It is apparent that Professor Wright agrees with Professor Moore. This Court agrees with both.

After noting that the hearing examiner panel's decision had been "subsequently affirmed on appeal at both the regional and national levels," Judge Blumenfeld concluded that "by its action the Board effectively undermined the court's intention and expectations that the defendant serve perhaps 12 to 16 months in prison and the remainder on parole." [*Id.* at 1249].

Judge Blumenfeld concluded that the Board had effectively undermined his intention because at the time of sentence "this court assumed that the defendant would be seriously considered for parole release at some point before the expiration of his sentence." He stated that "the court did not anticipate that the Board . . . would classify the defendant's offense behavior as being within the 'very high' range." Indeed, Judge Blumenfeld concluded that the only way he could effectuate the intent of his sentence was to grant the defendant's Rule 35 motion. Accordingly, he entered an order which reduced the sentence in a manner which would conform to his original sentencing intention and provide for the defendant's release, following the deduction of good time credit, after approximately 14 months.

We believe it important to note that Judge Blumenfeld delayed the decision of defendant's timely filed Rule 35 motion in *Manderville* until *after* the defendant had exhausted all his available administrative appeal remedies. While Judge Blumenfeld did not articulate the reasons for delaying his decision, we suspect that he, as an experienced district judge sitting in a district in which the Federal Correctional Institution at Danbury is located, and as a judge familiar with the Note, *Parole Release Decision-Making and the Sentencing Process,* 84 Yale L.J. 810 (1975), had learned, contrary to the notions sometimes entertained by federal prisoners, that erroneous lower level parole decisions are not infrequently reversed on appeal either at the regional or national level.[6]

*United States v. Wigoda,* 417 F.Supp. 276 (N.D.Ill. 1976), the second district court case we discuss, illustrates the type of factual situation in which the practical effect of any delay required the sentencing judge to a rule a timely filed Rule 35 motion *before* the defendant had exhausted all available administrative appellate remedies. *Wigoda* involved a one year sentence imposed after trial by Judge Marovitz of the Northern District of Illinois on December 2, 1974. Defendant's conviction was affirmed on appeal and *certiorari* was denied on March 1, 1976. Thereafter, defendant was resentenced on April 6, 1976, and his one year sentence was increased to a year and one day in order to make the defendant eligible for appropriate parole consideration under the then recently enacted Parole Commission and Reorganization Act.

On May 18, 1976 the defendant was given his initial hearing by the Parole Commission. Although the Bureau of Prisons recommended immediate parole, the defendant received a Notice of Action[7] dated May 28, 1976 and was notified on June 7, 1976 that his release date was continued to the expiration of his year and one day sentence.

Because of the shortness of the time involved, the defendant immediately filed a timely Rule 35 motion before making any

**6.** The files and records in *Bradley v. Mulcrone,* No. 79–0718–CV–W–1 (W.D.Mo.), show that this Court delayed ruling a habeas corpus petition attacking action taken by the Parole Commission until after the petitioner had exhausted all available administrative remedies. This Court's attention was recently directed to a successful appeal taken by a defendant sentenced by this Court. The case can be identified by checking the file of the defendant who carried Register No. 00642–173, confined at the Federal Correctional Institution at Fort Worth, Texas.

**7.** The Notice of Action in *Wigoda,* as the Notice of Action involved in this case, and as the

Notices of Action which this Court has considered in any number of other Parole Commission cases, contains the highly conclusory and self-serving language that "after review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted."

In none of those Notices of Action has the Parole Commission stated what "factors" or what "information" it may have considered to be "relevant" in support of its determination that a "decision outside the guidelines . . . is not found warranted."

effort to exhaust any of his rights of administrative appeal. Judge Marovitz stated the government's argument in opposition to defendant's motion, which sought to prevent decision of that motion on the merits, by stating that "though not contesting the timeliness of defendant's motion or the propriety of considering defendant's application under Rule 35, the government urges this Court not to act as a 'super parole board,' but rather to require defendant to pursue the normal administrative and judicial channels for review of the hearing officers' determination, and not to permit defendant to bypass the prescribed statutory remedies through collateral means."

Judge Marovitz concluded that "while the government's argument has some facial appeal, and may be appropriate in certain instances, we feel that the realities of the defendant's situation in terms of the statutory timetable of administrative and subsequent judicial appeals, requires this Court to exercise its discretionary powers under Rule 35 in what we feel to be the interests of justice." He elaborated on the reasons he believed he was required to act *before* the defendant had exhausted his available administrative remedies by stating:

> Though we are convinced that under the applicable statutory and regulatory standards the denial of parole to this defendant was improper, and are fairly confident that given the opportunity for an administrative appeal on both a regional and national level the determination of the hearing officers would be reversed; since the administrative appellate process would be unduly time consuming, and would unjustly extend the prison service time of this defendant, we opt to exercise our powers under Rule 35 to provide for defendant's release within

the period originally contemplated by this Court at the time of sentencing.[8] [*Id.* at 278].

He noted, in somewhat of a judicial understatement, that "the somewhat vexatious problem of the conflict between the Parole Commission's exercise of its discretion as to the grant or denial of parole in the face of a specific sentencing purpose and plan by the trial judge has been dealt with extensively in the reported case law." After citing numerous cases including but not limited to *Garafola v. Benson*, 505 F.2d 1212 (7th Cir. 1974) and *Grasso v. Norton*, 371 F.Supp. 171 (D.Conn. 1974), the rationale of which this Court noted in its July 22, 1980 memorandum has been expressly adopted by the Eighth Circuit in *United States v. Edwards*, 574 F.2d 938 (8th Cir. 1978), Judge Marovitz answered the government's "super parole board" argument, by stating:

> The very minimum that is required of the Parole Commission is that its consideration and determination of a prisoner's eligibility for parole must be meaningful and in compliance with the statutory standards and its own regulations. Where such a review is afforded by the Commission, a court will not interfere with the final determination. Where, however, a court finds that the applicable standards were not adhered to, and that the Commission's determination was not meaningful or in accordance with the applicable regulatory standards, federal court intervention is appropriate. [*Id.* at 279].

Judge Marovitz therefore reached the merits of the timely filed Rule 35 motion and granted relief by reducing the defendant's sentence to the time he had served.

---

8. In a latter part of his opinion, Judge Marovitz also stated:

> Though in most instances it may be difficult for a sentencing court to take any action in response to an unexpected—and in the court's judgment, unwarranted—decision by the Commission, in cases such as this we are not left without a remedy. Since defendant's Rule 35 motion is timely, we may reduce his sentence to conform with our original sentencing intentions. [*Id.* at 281].

Most experienced district judges are familiar with the fact that attacks on Parole Commission action most frequently invoke habeas jurisdiction under 28 U.S.C. § 2241, the Administrative Procedure Act, or, until the Supreme Court decided *Addonizio* in 1979, under 28 U.S.C. § 2255. Judge Marovitz was obviously referring to the fact that "in most instances, Rule 35 was not available as a jurisdictional basis for the simple reason the 120 day period provided in that Rule will have expired."

*Wigoda* discussed the principles stated in *Garafola v. Benson* and in *Grasso v. Norton* in great detail. Both cases were quoted from extensively and formed the basis of Judge Marovitz' finding and conclusion that:

> The written decision denying parole herein reflects none of the considerations by Judge Tone [stated in *Garafola v. Benson*] and contained in the applicable regulations. Though the Notice of Action recites that the hearing officers felt that a decision outside the guidelines would not be appropriate, the lack of any supporting reasons or explanations for such a determination makes it difficult, if not impossible, to determine whether defendant has been denied parole for appropriate reasons. [*Id.* at 280].

Judge Marovitz made clear that he was not entering a blanket order which prohibited use of the boiler plate language customarily used by the Parole Commission to which we directed attention in footnote 7 above. He stated in that regard that "while we do not hold that in every parole determination the Commission must necessarily review all of the factors noted in the regulations; where, as here, the materials before the hearing officers point very strongly toward the grant of parole, some explanation beyond the adoption of boiler-plate language is required."

In addition to finding that the hearing officers' determination as reflected by the Notice of Action violated both the statutory scheme and the Commission's own regulations, Judge Marovitz made findings and conclusions in regard to whether the defendant had been given *meaningful* parole consideration as required by law. Judge Marovitz stated that his intention at the time defendant was resentenced was as follows:

> When this Court resentenced defendant to a term of one year and one day, and specified that he should become eligible for parole after the expiration of one-third of his sentence, we intended to leave the parole determination to the sound discretion of the Commission, with the unspoken, but nevertheless clear, proviso that defendant be given a *meaning-*

*ful* parole consideration at that time, as required by law. (emphasis Judge Marovitz's) [*Id.* at 281].

He further found and concluded that "here, we genuinely believed that defendant would be given a meaningful parole hearing at the expiration of one-third of his sentence, as required by the law. Instead of reaching a good faith parole determination, however, it appears that the Commission has, instead, decided to in effect resentence defendant to a longer term than contemplated by this Court." [*Id.* at 282].

Judge Marovitz concluded as a matter of law that the *meaningful* parole consideration which he had anticipated at the time of sentencing had not been afforded the defendant for the following reasons:

> Where, however, as in this instance, it appears that the Commission through its hearing officers "is blindly adhering to a policy that a certain minimum amount of time must be served . . . [solely based upon statistical guidelines] . . ., it may well be arbitrary and capricious, an unwarranted intrusion into the judicial sentencing process, and in excess of the [Commission's] statutory authority. *Soloway v. Weger*, 389 F.Supp. 409, 411 (M.D.Pa. 1974). . . . "

> By its blind adherence to its raw statistical guidelines, however, it appears that the Commission, in an effort to achieve more uniformity in its determination, has actually obstructed its own ability to carry out the desires of the sentencing judge. [*Id.* at 281].

With respect to the practical effect of delaying his determination of defendant's Rule 35 motion on the merits until after the defendant had exhausted his available administrative appellate remedies, Judge Marovitz reiterated at the close of his opinion that:

> If defendant is compelled to proceed through administrative and judicial appeals of his parole denial, the whole process would most likely extend beyond his release date, which would moot his claim. Since we find the action by the hearing officers to be violative of the statutory

scheme and the Commission's regulations, as well as a subversion of this Court's sentence, we are left with no alternative but to grant defendant's motion and to reduce his sentence. [*Id.* at 282].

In the next part of this memorandum we shall discuss the practicalities of this case and the reasons which support our ultimate conclusion that we should defer ruling defendant's Rule 35 motion until after he has exhausted his available administrative remedies.

## V.

Delay in ruling defendant's motion in this case will not effectively moot his right to timely judicial review as it would have in *Wigado*. The defendant here has ample time to exhaust his available administrative appellate remedies before it may be necessary for this Court to rule the merits of the pending Rule 35 motion. Indeed, should the defendant obtain appropriate relief on administrative appeal, defendant's motion may be mooted in its entirety, or, at the very least, the then relevant factual circumstances on which the pending motion would be ruled could be in a substantially different posture for judicial consideration. For it is clear that substantial questions of fact are presented which the Parole Commission may resolve in defendant's favor and which would affect the length of time the defendant would be required to serve, even if the Parole Commission adheres to its apparent view that the guidelines should control the length of time the defendant is to remain in custody.

This Court has complete confidence in the Parole Commission's ability and willingness to recognize that substantial questions of fact which require careful administrative appellate review are presented under the factual circumstances of this case. It is also confident that appropriate attention will be given those questions during the course of administrative appellate review in accordance with the Parole Commission's regulations.

The stipulated transcript of the proceedings before the hearing examiner Panel shows that the Panel recognized the prime importance of the amount of money actually diverted to defendant's own use with respect to its application of the guidelines. On page 3 of that transcript one of the hearing examiners stated the following:

> We see that your offense behavior has been rated as very high severity because the amount of fraud was between $100,-000 and $500,000. We're constrained to use that $250,000 that is mentioned in the report as the amount of money that you diverted to your own use. *If you could furnish the Parole Commission at some time on a later date with the money that you diverted to your own use of less than $100,000, that would change your category from very high to high which could have a bearing in your case.* (emphasis ours).

Indeed, when the hearing examiners called the defendant back in to advise him of what recommendation would be made, the transcript shows that the defendant was advised as follows:

> Mr. Day and I have made a *recommendation according to the guidelines again,* that we talked about earlier. We feel that your past behavior should continue to be high severity *because the amount involved was between $100,000 and $500,-000.* . . . Guidelines established by the Commission indicate a customary range of 24 to 36 months, so what we're going to do is recommend that you will be continued to a presumptive parole after service of the minimum amount of time, 24 months, or a date of October 26, 1981. Now, if this comes back this way, it will be reviewed by our regional commissioner, all this information will be presented to him. If it comes back this way, you certainly do have the right to appeal it, you can get the forms from your case manager and *the basis for your appeal certainly could be that you feel it was only $96.000, rather than $100,000 to $500,000.* (Emphasis ours)

The Parole Commission's regulations require that its parole determinations be made under a "preponderance of the evidence." 28 C.F.C. § 2.19(c) (1979). The Hearing Summary, attached as Exhibit A to the affidavit filed in support of the

government's response filed March 19, 1980, made reference to some bankruptcy records which were apparently reviewed by the hearing examiner Panel. The summary parenthetically stated that a copy of those records was attached to that exhibit. The bankruptcy records to which reference was made in the summary, however, have not yet been presented to or reviewed by this Court.

Nor has this Court been furnished a copy of the report of the trustee in bankruptcy and the Stipulation and Consent Judgment (and possibly other bankruptcy court records) to which defendant's representative made reference at the defendant's initial hearing. See page 6 of Court Exhibit 2, the transcript of the initial hearing.

The Hearing Summary (page 2) recited that Mr. Dawson, defendant's representative, "presented documents with regard to the bankruptcy of the Citizens Loan & Savings Company which, Mr. Dawson indicates, would point to loss of $96,000 that subject diverted to his own use." The hearing examiner Panel, however, found as a matter of fact (page 1) that "There is no information in the files that would substantiate subject's claim of the $96,000."

It is premature for this Court to direct production either of the bankruptcy records on which the hearing examiners apparently relied or the report of the trustee in bankruptcy or other bankruptcy records upon which Mr. Dawson relied to support defendant's factual contention that the amount of money diverted by the defendant was $96,-000 rather than the "at least $250,000," which the hearing examiners found as a matter of fact was the amount of money diverted by the defendant.

The obvious question presented for administrative appellate review under the Parole Commission's own regulations, as the hearing examiner Panel itself recognized, is whether the Panel's finding of "at least $250,000" rather than the defendant's claim of $96,000, is supported by a "preponderance of the evidence."

This Court is confident that the Parole Commission will recognize the question so clearly presented for its consideration and that it will require the production of all the bankruptcy records to which the hearing examiner Panel made reference, and all the bankruptcy records to which Mr. Dawson made reference, and that it will insist that additional factual data be submitted to it in order that it may fairly and impartially determine which of the disputed figures is supported by the preponderance of the evidence.

This Court believes that considerations of comity require that it defer consideration of any order that might require the production of the bankruptcy or any other records until after the defendant has exhausted his available administrative appellate remedies. In our judgment, the Parole Commission is entitled to proceed in this case as it would proceed in any other case in order that it may fairly determine what figure should be used in its calculation of the severity of the offense. This Court is satisfied that the Parole Commission will not only review the bankruptcy records considered by the hearing examiner Panel but that it will also require production of any additional records and factual data that may be necessary under the circumstances in its compliance with 28 C.F.R. § 2.19(c) (1979). It is clear that 18 U.S.C. § 4207 provides that the Parole Commission may consider "such additional relevant information . . . as may be reasonably available" to it, in addition to five items set forth in that statute.[9]

---

9. The government has recently furnished a certified copy of defendant's Appeal to the National Appeals Board, dated June 27, 1980. Defendant stated in that form that he wished to be represented by Mr. Dawson who represented him at the initial hearing and that the "explanation of appeal will be submitted by my attorney."

The government advises that the Parole Commission has not yet received anything from the defendant's designated representative. This may be due to some lack of communication or to the deterioration of the United States Postal Service.

At any rate, we are not at this time required to reach any ineffectiveness of representation question of the type discussed in the Note: *Parole Release Decision-making and the Sentencing Process*, 84 Yale L.J. 811 at 839 (1975). We are confident that the Parole Commission

It is appropriate to add that we believe that a reciprocal duty rests upon a defendant and his representative to provide the Parole Commission with all factual data and information which a defendant considers relevant to meaningful parole consideration. This Court is satisfied that the present statutory parole structure is based on a general Congressional assumption that, absent exceptional circumstances, a defendant is under duty, in the first instance, to present his case fully and fairly to the Parole Commission before seeking judicial relief.

Apart from the fact that 28 C.F.R. § 2.19(c) (1979) requires the Parole Commission to base its factual findings on a preponderance of the evidence, the Supreme Court made clear in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), that a sentence imposed by a district judge was invalid if based upon assumptions subsequently shown to be false. It is difficult to see how the Parole Commission could be subject to any different standard.[10]

This Court is confident that the Parole Commission also is familiar with the decision of the Supreme Court in *Arciniega v. Freeman*, 404 U.S. 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971), in which the Court concluded that the Parole Commission must, in accordance with its own regulations, have "satisfactory" evidence before it to support its determinations.[11]

In *Bradley v. Mulcrone*, No. 79–0718–CV–W–1, (W.D.Mo.), we recently stated in an unreported memorandum opinion filed November 13, 1979 that:

> This Court must assume that the full Commission will decide the merits of petitioner's pending appeal in a fair and impartial manner. Indulgence in any other assumptions would require this Court to make a finding that the appeal from the National Commissioners to the full Commission is simply a matter of form and that the full Commission has already decided to rubber-stamp the decision of reincarceration made by the National Commissioners. We refuse to make such a finding.

will voluntarily take appropriate administrative action which will ensure that the defendant's pending appeal is decided on the merits on the basis of an adequate factual record. We must assume for present purposes that the Parole Commission, in the discharge of its appellate duties, will not commit the sort of error committed by the hearing examiner in *Williams v. U. S. Parole Board*, as described in Part IV of that opinion at page 405.

10. The growing concern relating to the reliability of factual data in presentence reports, their disclosure, and the participation by defense counsel in the sentencing process is illustrated by the fact the entire June, 1980 issue of the Harvard Law Review is devoted to the overall subject of *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv.L.Review 1621 (1980). An anomalous situation would indeed be presented, supported only by the procedures followed in the famous trial in Alice in Wonderland, should the developing law continue to impose ever increasing standards on the district court in its discharge of its duty to impose sentences while, at the same time, a different line of rules of decision would sustain the notion not only that a Parole Commission may totally disregard the sentence of the district court, but also base its decisions in regard to a defendant's eligibility for parole release on factual assumptions which may or

may not be accurate. What possible constitutional protection would be accorded a defendant under the law if it requires only that a district court's sentence must be based on accurate factual information and at the same time allows the Parole Commission to totally disregard the district court's sentence and to resentence the defendant on the basis of inaccurate factual assumptions which are not sustained by a preponderance of the evidence?

11. This Court is convinced that the Supreme Court's 1971 opinion in *Arciniega* may have much broader implications than the lower federal courts have apparently accorded that case. A reading of the Ninth Circuit's per curiam opinion reported in 429 F.2d 776 reflects an excellent example of the former judicial "hand's off policy" under which the Parole Commission operated under until the comparatively recent past. The Note, *Parole Release Decision Making and Sentencing Process*, 84 Yale L.J. 810, at page 842, we believe correctly stated that "one of the most striking aspects of the traditional parole release process has been the virtual unreviewability of Parole Board decisions affecting the substantial personal rights of prisoners."

That Note, we believe correctly stated that denial of parole claims are presently being subjected to more appropriate judicial review.

The Court has been advised that the defendant has not fully exhausted all available administrative appellate remedies. We are confident, however, that final administrative appellate action will be taken in the relatively near future. For the reasons we have stated, we are satisfied that we should further defer ruling defendant's Rule 35 motion until we are advised of the final action which the Parole Commission may take in regard to defendant's pending administrative appeal.

It is therefore

ORDERED (1) that this Court's February 22, 1980 order, which provided that the Court retain jurisdiction of the pending Rule 35 motion in order to develop the relevant and factual circumstances and until further order of the Court, be continued in full force and effect and until further order of Court. It is further

ORDERED (2) that counsel advise the Court when final action is taken in connection with defendant's pending administrative appeal so that appropriate orders may be entered under which a further stipulation of fact may be presented to the Court, if necessary, under the circumstances. It is further

ORDERED (3) that the Clerk transmit a copy of this memorandum opinion and order to the Parole Commission so that the Court may have the benefit of any response which it may deem to be appropriate under the circumstances.